[No. 12685–1–II.  Division Two.  May 1, 1990.]

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 1445, *Appellant,* v. THE CITY OF KELSO, ET AL, *Respondents.*

*Mark E. Brennan* and *Webster, Mrak & Blumberg,* for appellant.

*Patrick L. Brock, Borders & Brock, Mark W. Berry, Larry E. Halvorson,* and *Davis, Wright & Jones,* for respondent Kelso.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* for respondent Public Employment Relations Commission.

WORSWICK, J.—The Kelso city government has never gotten on well with its fire fighters' union, International Association of Fire Fighters, Local 1445. Perhaps partly because of this troubled relationship, the City decided to turn over its fire protection services to Cowlitz County Fire Protection District No. 2 by annexing to the district pursuant to RCW 52.04.[1] The City's decision and related activity brought on litigation between the City and the union before the Public Employment Relations Commission. The union now appeals and the City cross–appeals PERC's decision and order that found unfair labor practices by the City.[2]

The union contends that PERC's "make whole" remedy for the City's unfair labor practices was inadequate. The City contends that it committed no such practices. The parties' many detailed contentions will be disposed of by our resolution of three issues: (1) when annexation of the City to the fire district became effective; (2) whether the record supports PERC's decision that the City committed an unfair labor practice by discharging two fire fighters; and (3) whether the City's refusal to engage in "interest arbitration" was an unfair labor practice. We hold that annexation became effective upon certification of the annexation election, that PERC's decision concerning discharge of the fire fighters was supported by the record, and that the City's refusal to engage in interest arbitration was not an unfair labor practice. Accordingly, we affirm part and reverse part of PERC's order.

---

[1]In 1985, the Legislature amended RCW 52.04.061 to permit annexation to fire districts by cities of 100,000 or less. Laws of 1985, ch. 313, § 1. Prior to amendment, the upper limit was 10,000. Kelso has 11,000 inhabitants.

[2]We accepted direct review, pursuant to former RCW 34.04.133, on certification by the Superior Courts for both Cowlitz County, where the City appealed, and Thurston County, where the union appealed.

There was a history of bitter labor relations between the parties, occasionally portrayed in the local press. The record and PERC's unchallenged findings of fact show that the City and the union had been parties to a series of collective bargaining agreements, the latest of which had not been signed until July 30, 1985, although it covered the period January 1, 1984, to December 31, 1986. In fact, during late 1983 and throughout 1984 and 1985, the parties had negotiated to replace an agreement that expired December 31, 1983.

As a result of several disputes between 1982 and 1984, the City had earlier attempted to fulfill its fire suppression requirements by contracting with the fire district, the union had filed unfair labor practices claims under RCW 41.56, and PERC had ruled that the City's attempt to obtain services from the district was a mandatory subject of collective bargaining and that the City had failed to bargain. *International Ass'n of Firefighters, Local 1445 v. Kelso,* Pub. Empl. Relations Comm'n Dec. 2120 PECB, *aff'd,* Pub. Empl. Relations Comm'n Dec. 2120-A PECB (1985). In addition to this favorable ruling from PERC, the union had obtained a superior court injunction in Cowlitz County prohibiting the City from contracting for suppression services with the district.

Soon after this round of litigation, the City laid off its two most junior fire fighters, Dean Bolden and Robert Stephenson, claiming a budgetary shortfall. The union filed a new complaint with PERC, alleging that the layoffs were retaliatory and that the City refused to respond to requests to bargain the layoffs. This complaint was pending when, on August 6, 1985, the City announced its intent to annex to the fire district. Proceeding with its annexation plans, the City passed the required ordinance and the fire district passed the required resolution. The Cowlitz County

Boundary Review Board approved annexation, and the proposal was placed on the general election ballot for November 5, 1985.

The union demanded bargaining of both the decision to annex and its effects.[3] When the parties met in September 1985, the union proposed that, if annexation occurred, all city fire fighters be guaranteed positions with the fire district. The parties failed to agree, and the union requested PERC mediation. Mediation failed, and PERC declared an impasse and referred to interest arbitration the "annexation effects" issues of (1) interim employment and/or severance pay for fire fighters displaced by the annexation, and (2) recall rights for fire fighters displaced by the annexation should the City reinstate its fire department. *See* RCW 41.56.430 *et seq.* Interest arbitration was, however, held in abeyance pending PERC's decision on the union's other complaints against the City.

Meanwhile, the voters approved annexation in the November 1985 general election. On November 14, 1985, 4 days before the election results were certified, the City notified its remaining fire fighters that they would be laid off effective December 1, 1985. The fire district assumed responsibility for Kelso fire protection beginning December 1, 1985, pursuant to an oral contract with the City, although the district would not be entitled to tax revenue from city territory until January 1987. *See* RCW 84.09.030.

The issues raised by the union's PERC complaint were presented to a hearings examiner. The examiner entered findings of fact and conclusions of law and essentially ordered the City to: (1) cease and desist from interfering with former fire fighter employees in the exercise of their collective bargaining rights; (2) make Bolden and Ste-

---

[3]PERC ultimately decided that the City had no duty to bargain the *decision* to annex, and that issue is not before us.

phenson whole for the layoff period of February 1, 1985, to December 31, 1986; (3) make whole fire suppression personnel laid off after annexation for wages and benefits lost between December 1, 1985, and December 31, 1986; (4) bargain the effects of annexation and proceed to interest arbitration if an impasse was reached; (5) reimburse the union for costs and reasonable attorney fees. *International Ass'n of Firefighters, Local 1445 v. Kelso,* Pub. Empl. Relations Comm'n Dec. 2633 PECB (1988). Both parties sought PERC review of the examiner's decision.

On October 17, 1988, PERC issued a decision that altered the examiner's in only two respects: it found that the Bolden and Stephenson layoffs were in retaliation for their complaints of unfair labor practices, and it concluded that the City committed unfair labor practices in laying off Bolden and Stephenson on the pretext of a budget shortfall and in refusing to bargain the layoffs. *International Ass'n of Firefighters, Local 1445 v. Kelso,* Pub. Empl. Relations Comm'n Dec. 2633–A PECB (1988).

The major economic issues in the case, PERC's make whole remedies for all fire fighters including the two junior men laid off first, are controlled by a determination of when annexation became effective.[4] PERC accepted the union's contention that the effective date of annexation was within the City's discretion, and that the district had no obligation to assume fire protection services until it was entitled to tax revenue from the city territory. This conclusion underpinned the requirement that the fire fighters be compensated through December 31, 1986. We agree with the City that

---

[4]That the City continued to provide fire suppression services until the December 1, 1985, effective date of its contract with the fire district is a matter of expedience, not law, and whether the City's decision to seek annexation was motivated by anti–union animus is irrelevant. *Textile Workers Union v. Darlington Mfg. Co.,* 380 U.S. 263, 13 L. Ed. 2d 827, 834–35, 85 S. Ct. 994 (1965) (bona fide termination of business cannot yield benefit as might result from lockout, *e.g.,* such termination, even if motivated by spite against the union, is therefore not actionable under National Labor Relations Act provision similar to RCW 41.56-.140).

annexation became effective upon certification of the election, and that PERC committed an error of law in holding otherwise.[5]

■■ The interpretation of a statute is a question of law for the court. *Codd v. Stevens Pass, Inc.,* 45 Wn. App. 393, 398, 725 P.2d 1008 (1986), *review denied,* 107 Wn.2d 1020 (1987). Under former RCW 34.04.130(6)(d), issues of law are reviewed de novo, and the reviewing court may substitute its judgment for that of the administrative body. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

■ In its present version, the pertinent portion of the annexation statute, RCW 52.04.071, says nothing about the effective date of annexation, but only that

> [i]f a majority of the persons voting on the proposition in the city or town and a majority of the persons voting on the proposition in the fire protection district vote in favor thereof, the city or town shall be annexed and shall be a part of the fire protection district.[6]

---

[5]Our review of administrative decisions is controlled by former RCW 34.04-.130(6), which states in part:

"The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

". . . .

"(d) affected by other error of law; or

"(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; . . .".

[6]The full text of the statute reads:

"**Annexation of contiguous city or town—Election.** The county legislative authority or authorities shall by resolution call a special election to be held in the city or town and in the fire protection district at the next date provided in RCW 29.13.010 but not less than forty–five days from the date of the declaration of the finding, [that the public interest will be served by annexation] and shall cause notice of the election to be given as provided for in RCW 29.27.080.

"The election on the annexation of the city or town into the fire protection district shall be conducted by the auditor of the county or counties in which the city or town and the fire protection district are located in accordance with the general election laws of the state. The results thereof shall be canvassed by the canvassing board of the county or counties. No person is entitled to vote at the

We hold, however, that this language makes annexation of a contiguous city or town to a fire district effective upon certification of the election results.

RCW 52.04 was amended in 1984 to "[m]odernize archaic language and obsolete references in sections involving fire protection." *Legislative Digest & History of Bills,* 48th Leg. 1983–1984, at 613 (No. 4; final ed.); Laws of 1984, ch. 230, § 16. This cosmetic surgery left an unfortunate scar: clear legislative intent was obscured, because the amendment removed the word "thereupon" from the critical language, which had read "the city or town shall *thereupon* be annexed and shall be part of the fire protection district." (Italics ours.) Under the preamendment wording, annexation clearly was effective immediately upon certification of the vote. An undefined word in a statute is given its ordinary meaning. *State ex rel. Graham v. Northshore Sch. Dist. 417,* 99 Wn.2d 232, 244, 662 P.2d 38 (1983). "Thereupon" means "immediately . . .; at once." *Webster's New World Dictionary* 1475 (2d college ed. 1976). The usual presumption that a change in statutory language shows a change of legislative intent is overcome by the stated purpose of the amendment. *See Fisher Flouring Mills Co. v. State,* 35 Wn.2d 482, 213 P.2d 938 (1950); *State v. Alberts,* 51 Wn. App. 450, 754 P.2d 128, *review denied,* 111 Wn.2d 1006 (1988); 1A C. Sands, *Statutory Construction* § 22.31 (4th rev. ed. 1985). Nothing in the

---

election unless he or she is a qualified elector in the city or town or unless he or she is a qualified elector within the boundaries of the fire protection district. The ballot proposition shall be in substantially the following form:

"'Shall the city or town of _ _ _ _ _ be annexed to and be a part of _ _ _ _ _ fire protection district?

YES _____
NO _____ '"

"If a majority of the persons voting on the proposition in the city or town and a majority of the persons voting on the proposition in the fire protection district vote in favor thereof, the city or town shall be annexed and shall be a part of the fire protection district."

legislative history of the amendment shows any legislative intent to alter the statute's preamendment meaning.

The Michigan Supreme Court reached the same result as we do when it reviewed a statute similar to ours. *Dearborn Township v. Dearborn,* 308 Mich. 284, 13 N.W.2d 821, 823 (1944). The Michigan statute, however, had escaped the cosmetic editing to which RCW 52.04 was subjected.

■ Our interpretation also fosters the salutary public policy affecting all election statutes. Because statutes that affect voting are of great public interest, they are interpreted with a view to securing for citizens the choices expressed by election results. *See* 3A C. Sands, *Statutory Construction* § 71.08, at 567 (4th rev. ed. 1986). That policy is furthered by our holding that because no provision of law said otherwise, the result of the annexation became effective upon certification of the election returns. *Cf. State ex rel. Thorp v. Devin,* 26 Wn.2d 333, 173 P.2d 994 (1946) (determining effective date of new city charter).

In sum, when the election results were certified on November 18, 1985, the City was out of the fire suppression business and no longer had the authority or responsibility to maintain its fire department. Accordingly, PERC's order is reversed insofar as it requires the City to make whole former fire suppression personnel laid off effective December 1, 1985, as a result of the annexation, and insofar as it requires the City to bargain with the union concerning the effects of annexation.[7]

■ We affirm PERC's decision, however, that the February 1985 layoffs of Dean Bolden and Robert Stephenson were in retaliation for their union activities protected under

---

[7]Our decision disposes of the union's claim concerning the inadequacy of PERC's make whole remedy. The union contends that because PERC's make whole remedy extended through December 31, 1986, the fire fighters would have been employed on April 3, 1986, when RCW 52.04.111–.131 went into effect, providing for preferential hiring treatment of fire fighters from an annexed entity with the annexing fire district. Because of the effective date of annexation, the fire fighters would not have been employed by the City on April 3, 1986.

RCW 41.56.140. The City challenges PERC's factual finding to the effect that the City's budgetary shortfall explanation for the layoffs was a pretext, and that the layoffs constituted an unfair labor practice because they were in reprisal for the employees' involvement in protected activity. Agency factfinding is reviewed under the "clearly erroneous" standard, which allows the reviewing court to declare a finding clearly erroneous "'when although there is evidence to support [the finding], the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed.'" *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d at 324. We are not convinced, upon the record before us, that PERC was mistaken in this decision.

The test for determining whether a termination was in reprisal for protected conduct, called the *Wright Line* test (*Wright Line v. Lamoureux,* 251 N.L.R.B. 1083 (1980)) or the dual motive test (*Highline Comm'ty College v. Higher Educ. Personnel Bd.,* 45 Wn. App. 803, 809, 727 P.2d 990 (1986), *review denied,* 107 Wn.2d 1030 (1987)), has two parts. First, the employee must present a prima facie case, supported by a preponderance of the evidence (*Highline Comm'ty College,* 45 Wn. App. at 809), that he engaged in protected conduct, and that such conduct was *a* motivating factor in the employer's decision. Once the employee has met this burden, the employer has the burden of showing that the employee would have been terminated anyway. *Highline Comm'ty College,* 45 Wn. App. at 809; *Clallam Cy. v. Public Empl. Relations Comm'n,* 43 Wn. App. 589, 598, 719 P.2d 140, *review denied,* 106 Wn.2d 1013 (1986). The record supports PERC's implicit conclusion that the union met its burden.

The union engaged in protected activity when it contested the City's attempt to rid itself of fire suppression duties. The notice of the layoffs came January 18, 1985, just 3 weeks after the union obtained a favorable PERC decision and court injunction. Further, the record contains documentary evidence showing that the $40,000 fire

department shortfall roughly corresponded to an unbudgeted amount the City spent for fire department legal fees in 1984, the year of the PERC decision. The record was sufficient for PERC to conclude, by a preponderance of the evidence, that the laid off fire fighters' involvement in protected activity was *a* motivating factor in the City's decision on the layoffs.

The record also supports PERC's conclusion that the City did not meet its burden of overcoming the union's prima facie case. The Kelso public safety director testified that the layoffs were demanded by the budget because the fire department had a $40,000 deficit in 1984. The city manager, however, testified that budget excesses or shortfalls are not carried over to the next year's budget. As noted above, the nature of this overexpenditure is suspicious. Further, while the police department was also over budget, it was not subjected to layoffs. Finally, even though the fire department was over budget, the general fund of which it was a part showed a surplus of $100,000. Upon the record as a whole, PERC was entitled to conclude that the layoffs were retaliatory.

PERC's remedy for this unfair labor practice, however, was excessive. Its order granted Bolden and Stephenson relief through December 31, 1986. Because of the effective date of annexation, however, the relief must terminate as of December 1, 1985, the date the fire district actually began providing services to the City.

We agree with the City's contention that PERC erred in holding that the City's refusal to submit to interest arbitration under RCW 41.56.430 *et seq.* on the effects of annexation was an unfair labor practice under RCW 41.56.140(4).[8] We review this issue of law de novo (*Franklin County Sheriff's Office*, 97 Wn.2d at 325), and we

---

[8]It is debatable whether we need to discuss this contention as it is not apparent that PERC imposed any penalties for the City's refusal to arbitrate. Also, the record is far from clear on the circumstances of the City's refusal, or, indeed, if there was any refusal. However, the issue is important and a decision now would be helpful to all concerned in this field. *Cf. Hart v. Department of Social &*

hold that refusal to participate in interest arbitration is not an unfair labor practice.

RCW 41.56, the public employees collective bargaining act, was amended in 1973 to provide an interest arbitration process as an alternative to strikes for settling labor disputes involving uniformed personnel. Laws of 1973, ch. 131, § 1; RCW 41.56.430 *et seq.* The interest arbitration provisions of the law are self–contained and include a specific remedy for noncompliance. When bargaining and mediation result in an impasse, PERC can certify appropriate issues for interest arbitration. RCW 41.56.440, .450. If either the employees' representative or the public employer, or both, refuse to submit to arbitration, the other party or PERC may invoke the jurisdiction of the superior court for the county in which the dispute exists to issue an appropriate order. RCW 41.56.480. PERC's authority is limited to such certification of issues and application for court enforcement. It has no power to declare such refusal an unfair labor practice.

RCW 41.56.140 provides:

> **Unfair labor practices for public employer enumerated.** It shall be an unfair labor practice for a public employer:
> (1) To interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter;
> (2) To control, dominate or interfere with a bargaining representative;
> (3) To discriminate against a public employee who has filed an unfair labor practice charge;
> (4) To refuse to engage in collective bargaining.

Number (4), although a generalized "catchall" category, does not apply to what the City did, if it did anything, because, by definition and logic, a refusal to arbitrate is not a refusal to bargain.

It is axiomatic that, in bargaining, the parties retain the power of decision and are not required to agree. RCW

---

*Health Servs.*, 111 Wn.2d 445, 447–50, 759 P.2d 1206 (1988) (criteria for deciding moot issues).

41.56.030(4);[9] *cf. NLRB v. Jacobs Mfg. Co.,* 196 F.2d 680, 684 (2d Cir. 1952) (within collective bargaining, employer free to make economic decisions and free to agree only insofar as he is willing in light of all circumstances). Conversely, parties in arbitration have relinquished the power of decision to the arbitrators. Moreover, under the scheme set out in RCW 41.56.430–.490, *arbitration* occurs after *bargaining* has failed. Obviously it follows that refusal to participate in arbitration cannot be characterized as refusal to bargain.

Finally, PERC's award of costs and attorney fees must be reexamined, inasmuch as most of the relief PERC granted was invalid. That examination can best be done by the Superior Court on remand. No costs are to be awarded on this appeal.

Affirmed in part; reversed in part. Remanded to Thurston County Superior Court for such further proceedings as are required by this opinion.

ALEXANDER, C.J., and PETRICH, J., concur.

Review denied at 115 Wn.2d 1010 (1990).

---

[9]Under RCW 41.56.030, "'Collective bargaining' means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions, which may be peculiar to an appropriate bargaining unit of such public employer, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter."