IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TEAMSTERS LOCAL 839, | ) | No. 36974-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| BENTON COUNTY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Benton County appeals the Public Employment

Relations Commission's (PERC) order that determined the County committed unfair

labor practices (ULPs) in the methods it used to recoup overpayment of wages from its

employees, unit members of Teamsters Local 839. The County argues the methods it

used complied with RCW 49.48.200 and RCW 49.48.210(10), the wage overpayment

statutes. It argues PERC misapplied the law by determining that the procedures in the

wage overpayment statutes are subject to chapter 41.56 RCW, the Public Employees'

Collective Bargaining Act (PECBA). We disagree.

We hold that recovery of overpaid wages from a union member's future paychecks

or accrued leave is a mandatory subject of bargaining. We also hold that the PECBA and

the wage overpayment statutes do not conflict. Read together, a public employer must provide employees covered by a collective bargaining agreement the notice required by RCW 49.48.210(10) and then bargain with the union about how overpaid wages are to be repaid. We affirm PERC's order determining that the County committed ULPs.

The County also argues PERC's remedy is arbitrary and capricious. PERC required the County to return the parties to status quo ante[1] by returning the wages and accrued leave it recouped from employees, plus interest. We affirm PERC's remedy and clarify the applicable interest rate and when interest commences.

## FACTS

On November 1, 2016, the Benton County Auditor's Office discovered an accounting software error had caused sheriff office employees, including 85 corrections officers, to be overpaid from June 2016 through September 2016. Whenever hours were entered into a particular accounting system pay code, the software error caused an improper increase in compensation. The County, aware that RCW 49.48.200 permitted it to recoup overpaid wages from its employees' future wages, decided it would do so.

---

[1] Status quo ante does not deprive the County of its original rights, i.e., collect the overpaid wages using the correct procedure.

2

The next day, Benton County Auditor Brenda Chilton sent Sheriff Steven Keane a memo that notified him of the coding error. The memo explained how the error occurred and that the County had the right to recoup overpayments by deducting up to five percent of gross earnings from employee wages. On November 3, the sheriff's office e-mailed the memo to its employees.

Teamsters Local 839 is the bargaining representative for the County's corrections officers. Teamsters learned of the November 3 e-mail and the next day filed a Step 2 grievance with Sheriff Keane. The grievance notified Sheriff Keane that state law permitted deduction from disposable wages, not gross wages, and the memo failed to provide various information required by state law. Teamsters offered to discuss the grievance with Sheriff Keane prior to his formal response.

On November 15, the sheriff's office served its employees with a "Notice-Wage Overpayment Repayment Demand" letter. Clerk's Papers (CP) at 61-62. This letter notified each affected employee that the employee had received wage overpayments, the overpaid amount, an explanation of the software error, and it provided the entire text of RCW 49.48.200.

The letter stated the County had begun the statutory process for overpayment recovery and requested that the employee select one of three options for repayment and

sign the letter. The options were: (1) deduct the full overpayment amount from the employee's next paycheck, (2) deduct an employee-specified amount from future paychecks, or (3) deduct an amount that would not exceed five percent of the employee's disposable earnings in a pay period from future paychecks. There was no option for contesting the County's assertion that overpayment occurred or the County's calculation of the overpaid amount. The letter stated, if the employee did not respond within 20 days, and if the amounts were not disputed, the County would begin deducting the statutory five percent of disposable earnings beginning with the employee's January 2017 paycheck. The County did not send a copy of the November 14 letter to Teamsters.

On November 28, the sheriff's office forwarded a November 23 e-mail to its employees that informed them of a fourth repayment option—cashing out accrued leave. The e-mail stated that if an employee did not select a repayment option by December 20, the default five percent of disposable earnings would be withheld from future paychecks. The County did not send a copy of the November 23 e-mail to Teamsters.

On November 29, Sheriff Keane sent a letter to Teamsters responding to its Step 2 grievance. In the letter, he cited the following portion of RCW 49.48.210(10): "'Any dispute relating to the occurrence or amount of the overpayment shall be resolved using the grievance procedures contained in the collective bargaining agreement.'" CP at 400.

4

Implying that no corrections officer had disputed the occurrence or amount of overpayment, he denied Teamster's grievance.

On November 30, Teamsters sent a demand-to-bargain letter to Sheriff Keane. The letter stated if wage overpayments were made, Teamsters was in total agreement that employees should repay the overpaid amounts, but that Teamsters "must be allowed to bargain how this [would be] done." CP at 535. On December 1, Sheriff Keane sent an e-mail entitled "Demand to Bargain Letter" to Teamsters, Auditor Chilton, and others. CP at 537-38. Sheriff Keane stated he was willing to meet and discuss his role and limited authority, but he was unable to bargain the authority of the auditor's office and their statutory responsibility for recovering overpayments. He acknowledged that Teamsters had made clear to him that failure to bargain would result in the union filing a ULP complaint.

On December 1, Teamsters responded that it was "available to bargain anytime and eager to get the overpayment of wage issue(s) resolved as soon as possible" and requested dates Sheriff Keane would be available to bargain. CP at 538.

In January 2017, the County began deducting from employee wages and accrued leave. These deductions occurred without bargaining with or agreement of Teamsters.

By August 2017, the County had fully recovered the overpayments from its corrections

officers.

## PROCEDURE

Teamsters filed two separate ULP complaints with PERC. The first complaint

alleged the County circumvented Teamsters when it presented to corrections officers their

options for repayment without first bargaining these options with Teamsters. It also

alleged the County refused to bargain with Teamsters over its plan to recover

overpayments. The second complaint alleged the County refused to bargain by

unilaterally deducting overpayments from corrections officer's wages and accrued leave

without providing Teamsters an opportunity to bargain. A PERC ULP manager reviewed

the complaints, notified the parties of the stated causes of action, and forwarded them to

an "Examiner" for processing. The Examiner consolidated the two complaints.

Teamsters and the County filed cross motions for summary judgment. The

motions presented two legal questions. The first question was whether the PECBA

applied to recovery of overpaid wages. The parties agreed that the PECBA applied only

if recovery of overpaid wages was a mandatory subject of bargaining. If the PECBA

applied, the second question was whether the PECBA prevailed in the event there was a

conflict between it and RCW 49.48.200 and RCW 49.48.210(10), the wage overpayment

statutes.

The Examiner concluded that recovery of overpaid wages was a mandatory subject

of bargaining, so the PECBA applied. The Examiner also concluded that the wage

overpayment statutes did not insulate the County from complying with the PECBA. The

Examiner ruled the County committed ULPs when it circumvented Teamsters and refused

to bargain the decision of how the employees would repay the overpayments and then

unilaterally deducted the overpayments without bargaining. The Examiner ordered the

County to restore the status quo ante by returning the wages and accrued leave collected,

"plus interest." CP at 79.

The County appealed to the PERC board. The PERC board issued a decision

affirming the Examiner and adopting its findings of fact, conclusions of law, and order.

The County appealed PERC's decision to the Benton County Superior Court. That court

affirmed PERC's decision. The County then appealed to this court.

ANALYSIS

STANDARDS OF REVIEW

We review an appeal from a PERC decision involving a ULP in accordance with

the Administrative Procedure Act (APA), chapter 34.05 RCW. *Amalgamated Transit*

7

*Union, Local 1384 v. Kitsap Transit*, 187 Wn. App. 113, 123, 349 P.3d 1 (2015); *City of Vancouver v. Pub. Emp't Relations Comm'n*, 107 Wn. App. 694, 702, 33 P.3d 74 (2001). Under the APA, we may grant relief from an agency order for any one of nine reasons set forth in RCW 34.05.570(3). Of these, the one relevant to our disposition is whether PERC erred in interpreting or applying the law. RCW 34.05.570(3)(d).

When reviewing questions of law, an appellate court may substitute its determination for that of PERC, although PERC's interpretation of the PECBA is entitled to great weight and substantial deference, given PERC's expertise in administering this law. *City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 382, 831 P.2d 738 (1992); *Amalgamated Transit Union*, 187 Wn. App. at 123.

THE PECBA APPLIES

In its briefing, the County argues the PECBA does not apply to recovery of overpaid wages. We address this argument first. Only if the PECBA applies would we need to address the County's central argument that the wage overpayment statutes prevail in the event of a conflict between them and the PECBA.

Washington law splits collective bargaining issues into two categories—mandatory subjects of bargaining and permissive subjects of bargaining. *City of Everett v. Pub. Emp't Relations Comm'n*, 11 Wn. App. 2d 1, 15, 451 P.3d 347 (2019). "'[I]ssues that

address "wages, hours and other terms and conditions of employment" are "mandatory" subjects about which the parties *must* bargain.'" *Id.* (alteration in original) (quoting *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 460, 938 P.2d 827 (1997)). On the other hand, managerial decisions that "only remotely affect 'personnel matters'" are permissive subjects of bargaining. *Int'l Ass'n of Fire Fighters, Local Union 1052 v. Pub. Emp't Relations Comm'n*, 113 Wn.2d 197, 200, 778 P.2d 32 (1989). Determination of whether a subject of bargaining is mandatory or permissive is one of the fundamental responsibilities of PERC. *City of Everett*, 11 Wn. App. 2d at 16. We, therefore, look to PERC's previous decisions for guidance on whether recovery of overpaid wages is a mandatory subject of bargaining.

PERC previously ruled on this question in *Tacoma Police Union Local 6 v. City of Tacoma*, No. 23181-U-10-05904 (Wash. Pub. Emp't Relations Comm'n June 15, 2011). In *City of Tacoma*, the police chief reversed department policy and directed unionized officers to pay back wages they received participating, while on duty, in a charity basketball game. The police chief, without notifying the union and providing an opportunity to bargain over repayment, gave the officers three choices how to pay back the wages. The union filed a ULP. PERC held:

> There is no question that payment of wages is a mandatory subject of bargaining. The decision requiring members to forfeit paid wages represents a unilateral change that should have been bargained. The union was presented with a "fait accompli" as the employer did not provide notice to the union and made a unilateral decision to recoup wages.

*Id.* at 5.

The County attempts to distinguish *City of Tacoma*. It argues that case involved employees being required to forfeit wages purposely paid, while the present case involves employees repaying wages mistakenly paid. We understand the nuance, but disagree that the nuance changes the outcome. *City of Tacoma* squarely stands for the proposition that recovery of overpaid wages is a mandatory subject of bargaining. Whether the wages were purposefully paid or mistakenly paid does not change whether the wages were overpaid.

As we previously noted, PERC's construction of the PECBA is entitled to great weight and substantial deference. We see no reason to disagree with PERC's view, in this case, that deductions from employees' future paychecks or accrued leave are "issues that addresses 'wages,'" which is a mandatory subject. *Pasco Police Officers' Ass'n*, 132 Wn.2d at 460. We conclude that recovery of overpaid wages from a union member's future paychecks or accrued leave is a mandatory subject of bargaining.

THE PECBA PREVAILS OVER ANY CONFLICTING STATUTE

The County contends PERC erred by ruling that the PECBA prevails over the wage overpayment statutes. It argues those statutes are more recent and specific than the PECBA, and the legislature authorized public employers to bypass unions and discuss repayment of overpaid wages directly with union member employees.

We review issues of statutory construction de novo. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017). When interpreting a statute, our fundamental objective is to ascertain and give effect to the legislature's intent. *Id.* at 435. We begin with the plain meaning of the statute. *Id.* We consider the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Id.* If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent. *Id.* If, after this inquiry, the statute remains ambiguous or is unclear, it is appropriate to resort to canons of construction and legislative history. *Id.*

RCW 49.48.200(1)[2] authorizes a public employer to recover overpaid wages by deducting a portion of an employee's subsequent wages and permits deductions up to five percent of the employee's disposable income in a pay period or the full debt from the employee's final pay period. RCW 49.48.200(2) explains that an employee may agree to pay more than five percent of disposable income in a pay period and that an employer and employee may agree to any amount or method of repayment.

RCW 49.48.210 sets forth the procedure a public employer must follow to recover overpaid wages from future paychecks. Subsections (1) through (9) outline the procedure for nonunion public employees. The detailed process envisions the employer providing the employee notice of certain specific matters, an opportunity to exchange information, and the option for the employee to request an adjudicative proceeding.

---

[2] RCW 49.48.200 provides:
> **Overpayment of wages—Government employees.** (1) Debts due the state or a county or city for the overpayment of wages to their respective employees may be recovered by the employer by deductions from subsequent wage payments as provided in RCW 49.48.210, or by civil action. If the overpayment is recovered by deduction from the employee's subsequent wages, each deduction shall not exceed: (a) Five percent of the employee's disposable earnings in a pay period other than the final pay period; or (b) the amounts still outstanding from the employee's disposable earnings in the final pay period. The deductions from wages shall continue until the overpayment is fully recouped.

12

Subsection (10) is the procedure for union public employees and is the crux of the

parties' arguments.

RCW 49.48.210(10) provides:

> When an employer determines that an employee covered by a collective
> bargaining agreement was overpaid wages, the employer shall provide
> written notice to the employee.  The notice shall include the amount of the
> overpayment, the basis for the claim, and the rights of the employee under
> the collective bargaining agreement.  Any dispute relating to the occurrence
> or amount of the overpayment shall be resolved using the grievance
> procedures contained in the collective bargaining agreement.

The County argues the wage overpayment statutes should control over the PECBA

because they are newer and more specific.  Generally, it is true that a more specific statute

controls over a more general one.  *Lenander v. Dep't of Retirement Sys.*, 186 Wn.2d 393,

412, 377 P.3d 199 (2016).  However, this argument ignores an important part of the

PECBA.  The legislature, in crafting the PECBA, decided it should be construed liberally

and "if any provision of this chapter conflicts with any other statute, ordinance, rule or

regulation of any public employer, the provisions of this chapter shall control."

RCW 41.56.905.

If the legislature intended to make the wage overpayment statutes control over the

PECBA, it would have specifically provided for this.  We presume that the legislature,

when writing legislation, knows the area of law it is legislating within.  *Wynn v. Earin*,

13

163 Wn.2d 361, 371, 181 P.3d 806 (2008). We, therefore, presume the legislature knew the PECBA would control over the wage overpayment statutes. Without an express intention otherwise, the PECBA must control over other legislation.

The County argues that giving the PECBA precedence over the wage overpayment statutes creates disharmony. Statutes dealing with the same subject are to be construed harmoniously, if reasonably possible. *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001). The wage overpayment statutes and the PECBA overlap with respect to the process a public employer must follow to recover overpaid wages from its union employees.

We disagree with the County that giving the PECBA precedence over the wage overpayment statutes creates disharmony. First, there is nothing in the wage overpayment statutes that expressly permits a public employer to bypass its employees' bargaining representative. Nothing in RCW 49.48.200 or RCW 49.48.210(10) requires a public employer to have direct interaction with its employees. Second, the legislature recognized that repayment of overpaid wages involves a union member's bargained for rights when, in subsection (10), it required the employer's notice to include "the rights of the employee under the collective bargaining agreement." These rights include union representation on wage issues and the right to use the agreement's grievance procedure in

14

the event there is a dispute relating to the occurrence or amount of the overpayment.

Third, a public employer can provide its union member employees with the notice

required by RCW 49.48.210(10) and *then* bargain with the union about repayment

options. Construed in this manner, the two statutory provisions are harmonized.

The County next argues that *State v. Adams*, 107 Wn.2d 611, 732 P.2d 149 (1987),

holds that collective bargaining is not required for a public employer to recover overpaid

wages from union member employees. We disagree. In *Adams*, the court reviewed the

State's attempt to recover overpaid wages from 400 employees who disputed they were

overpaid. *Id.* at 613. This predated the wage overpayment statutes. There, the State sued

employees who had been overpaid and requested that the court permit it to deduct

"reasonable amounts" from their future paychecks. *Id.* at 614, 619. The union was not a

party to the action. The *Adams* court held that the State could not deduct reasonable

amounts from overpaid employees' future paychecks in the absence of protective

statutory procedures. *Id.* at 615. The *Adams* court did not discuss whether the State was

required to bargain with the union to recover overpaid wages. The issue simply was not

raised. We will not infer that the *Adams* court decided the union's rights, especially given

that the union was not a party to the action.

15

We conclude that the PECBA prevails over the wage overpayment statutes in the event of a conflict. Even so, we construe the relevant provisions as not being in conflict. The provisions, construed harmoniously, require a public employer to provide union member employees notice consistent with RCW 49.48.210(10) and then bargain with the union about repayment.

Here, the County circumvented Teamsters by directly dealing with its members about repayment of overpaid wages, it refused Teamsters' request to bargain over repayment options, and it deducted amounts from union member wages and accrued leave without providing Teamsters an opportunity to bargain. The wage overpayment statutes do not insulate the County from these actions. We affirm PERC's determinations that the County committed ULPs.

PERC'S REMEDY

The County contends PERC's remedy was arbitrary and capricious. It argues if it did violate any law, the law was unsettled and so its employees should not have been awarded repayment with interest. We disagree.

Although this court reviews conclusions of law made by PERC de novo, "PERC's interpretation of collective bargaining statutes is 'entitled to substantial weight and great deference.'" *Thorpe v. Inslee*, 188 Wn.2d 282, 290, 393 P.3d 1231 (2017) (quoting *City*

16

*of Bellevue*, 119 Wn.2d at 382). As this court previously found, "PERC's decisions are accorded extraordinary judicial deference, especially in the matter of remedies." *Pasco Hous. Auth. v. Pub. Emp't Relations Comm'n*, 98 Wn. App. 809, 812, 991 P.2d 1177 (2000). Unless the remedy is clearly beyond the scope of PERC's power, we generally affirm. *Id.* at 813.

The remedy applied in this case—to return its union member employees to status quo ante by repaying the withheld wages plus interest—is the standard remedy in cases where an employer commits a unilateral change. *Lewis County Corr. Guild v. Lewis County* No. 22324-U-09-5692 (Wash. Pub. Emp't Relations Comm'n July 15, 2011). This is clearly within PERC's authority in order to effectuate bargaining agreements, and our limited review ends there. Once the County returns its employees to status quo ante, plus interest, it may then recover the overpaid wages by following the correct procedure.

COMMENCEMENT OF INTEREST AND INTEREST RATE

PERC did not specify a commencement date of interest or an interest rate. The County raised this issue in a footnote, but Teamsters did not respond. Because this issue is likely to arise if not decided now, we requested supplemental briefing. *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 716, 911 P.2d 389 (1996).

17

The County first argues that no interest is owed. We disagree. PERC affirmed and adopted the Examiner's findings, conclusions, and order. The Examiner's order explicitly awarded interest as part of its status quo ante remedy. This envisioned returning the union employees to where they were as if the County had not wrongfully deducted their wages. We construe this as requiring interest to accrue on each sum on the date the sum was wrongfully deducted.

We now must decide the applicable interest rate. "Prejudgment interest is allowed in civil litigation at the statutory judgment interest rate, RCW 4.56.110, RCW 19.52.020, when a party to the litigation retains funds rightfully belonging to another and the amount of the funds at issue is liquidated, that is, the amount at issue can be calculated with precision and without reliance on opinion or discretion." *Mahler v. Szucs*, 135 Wn.2d 398, 429, 957 P.2d 632 (1998); *see also Pub. Util. Dist. No. 2 of Pacific County v. Comcast of Washington IV, Inc.*, 184 Wn. App. 24, 80, 336 P.3d 65 (2014); *Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co.*, 160 Wn. App. 912, 925, 250 P.3d 121 (2011). The parties do not dispute that the amount owed is liquidated. In general, the judgment interest rate is 12 percent per annum, unless otherwise provided for in RCW 4.56.110. *See* RCW 4.56.110(6); RCW 19.52.020(1)(a).

18

The County argues the interest rate is governed by RCW 4.56.110(3). We disagree. By its terms, that subsection applies to judgments founded on the "tortious conduct" of a public agency. Here, the Examiner's order is founded on its conclusions that the County committed ULPs. A ULP is not a tort. *See Wright v. Terrell*, 162 Wn.2d 192, 196, 170 P.3d 570 (2007) ("[ULP] claims under chapter 41.56 RCW are not tort claims for damages and are thus not subject to the claims filing statute."). We conclude the prejudgment interest rate is 12 percent per annum.

AMICI ARGUMENTS

The Washington Association of County Officials, Washington State Association of Counties, and Washington State Association of Municipal Attorneys filed an amici curiae brief.

Amici make three arguments: (1) PERC exceeded its authority by interfering with the County's managerial prerogative and discretionary act of the elected auditor to collect public debts, (2) PERC's order violated constitutional and statutory provisions for separation of powers because it had no authority to direct the elected auditor, not a party to the collective bargaining agreement, how to recover overpaid funds, and (3) PERC's remedy, requiring it to return collected overpaid wages, is an ultra vires gift of public funds prohibited by article VIII, section 7 of the Washington Constitution.

19

These arguments reflect a misunderstanding of PERC's order and potentially our decision today. Our decision (and PERC's order) does not prevent the elected auditor from recovering overpaid wages. Rather, our decision permits the County to collect the overpaid wages, but requires the County and its officials to comply with state law procedures. While it is true the elected auditor is not a party to the collective bargaining agreement, she must comply with state law. Our decision today is based on state law, not the collective bargaining agreement.

The purpose of an amicus brief is to help the court with points of law. *Ochoa AG Unlimited, LLC v. Delanoy*, 128 Wn. App. 165, 172, 114 P.3d 692 (2005). With only one minor exception, the issues raised by amici have not been raised by the parties. Briefing issues outside the scope of the appeal is not helpful to this court. It is improper for an amicus brief to raise such issues, and we decline to address them. *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 827, 854 P.2d 1072 (1993); *see also Cummins v. Lewis County*, 156 Wn.2d 844, 850 n.4, 133 P.3d 458 (2006); *Gallo v. Dep't of Labor & Indus.*, 155 Wn.2d 470, 495 n.12, 120 P.3d 564 (2005); *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984). *Cf. State v. Duncan*, 185 Wn.2d 430, 440, 374 P.3d 83 (2016) ("We may, but usually do not, reach arguments raised only by amicus.").

No. 36974-9-III
*Teamsters Local 839 v. Benton County*

Affirmed.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, A.C.J.

Siddoway, J.

21