[No. 49720–6.   En Banc.   April 5, 1984.]

RENTON EDUCATION ASSOCIATION, *Respondent,* v. THE PUBLIC EMPLOYMENT RELATIONS COMMISSION, *Respondent,* WASHINGTON FEDERATION OF TEACHERS, AFL–CIO, *Appellant.*

436

Herbert H. Fuller and Jay S. Fuller (of Fuller & Fuller), for appellant.

Durning, Webster & Lonnquist, Judith A. Lonnquist, and Symone B. Scales, for respondent Renton Education Association.

Kenneth O. Eikenberry, Attorney General, Richard A. Heath, Senior Assistant, and Donald F. Cofer, Assistant, for respondent Public Employment Relations Commission.

Faith Hanna on behalf of Washington Education Association, amicus curiae for respondent Renton Education Association.

DORE, J.—This action involves direct review of a trial court decision overruling an order of Washington State Public Employment Relations Commission (PERC) which had held that certified employees of Renton Vocational–Technical Institute were entitled to severance and a representation election for the purpose of forming a collective bargaining unit separate from other certified employees of Renton School District.

We reverse the trial court and reinstate the findings and order of PERC.

ISSUE

The basic issue concerns interpretation of the bargaining unit determination provisions of the Educational Employ-

ment Relations Act, RCW 41.59. We are called on to determine whether RCW 41.59.080 permits severance of vocational-technical employees from a district-wide bargaining unit when there has been alleged previous representation of such employees by the bargaining unit.

I

Renton Education Association (REA) and Washington Federation of Teachers are employee organizations within the meaning of RCW 41.59.020(1), and Renton School District is an employer within the meaning of RCW 41.59-.020(5). Renton School District heretofore has recognized REA as bargaining representative of virtually all its certified educational employees, including the vocational-technical employees of Renton Vocational-Technical Institute.

Prior to 1976, representation by REA was conducted pursuant to the meet-and-confer statute, RCW 28A.72. The meet-and-confer statute did not require school districts to enter into collective bargaining agreements, but merely required that the school districts meet, confer and negotiate with representatives of employee organizations prior to adoption of the school district policies. Due to the all-encompassing nature of RCW 28A.72.030, all certified employees in the school district were lumped together in one bargaining unit. No provision was made in this particular statute for separate bargaining units for either principals or vocational-technical personnel. Thus, vocational-technical employees were, essentially, not permitted to decide whether or not they wished to be represented by this bargaining unit. The vocational-technical employees were simply blanketed into the wall-to-wall bargaining unit permitted by RCW 28A.72.030. There has never been an election by the district-wide employees pursuant to RCW 28A.72.030 to determine whether REA was the appropriate bargaining representative of the unit.

In 1975, the Legislature enacted RCW 41.59, an amendatory act, also known as the Educational Employment Relations Act. This act became effective January 1, 1976 and

repealed the prior meet–and–confer statute, RCW 28A.72. Shortly thereafter, on April 21, 1976, a petition was filed with PERC for investigation of a question concerning representation of employees of Renton Vocational–Technical Institute. This initial petition was dismissed for insufficiency of showing of interest, but remained pending on appeal until a date following the filing of the petition giving rise to the instant action. This petition was filed with PERC on June 7, 1977 by Washington Federation of Teachers seeking a severance and representation election among employees of Renton Vocational–Technical Institute to determine if Washington Federation of Teachers could be certified as the exclusive bargaining representative of the aforementioned employees.

The particular section of RCW 41.59 which sets forth the criteria for the determination of a bargaining unit is RCW 41.59.080, which provides in pertinent part as follows:

> The commission, upon proper application for certification as an exclusive bargaining representative or upon petition for change of unit definition by the employer or any employee organization within the time limits specified in RCW 41.59.070(3), and after hearing upon reasonable notice, shall determine the unit appropriate for the purpose of collective bargaining. In determining, modifying or combining the bargaining unit, the commission shall consider the duties, skills, and working conditions of the educational employees; the history of collective bargaining; the extent of organization among the educational employees; and the desire of the educational employees; except that:
>
> (1) A unit including nonsupervisory educational employees shall not be considered appropriate unless it includes all such nonsupervisory educational employees of the employer; and
>
> . . .
>
> (6) A unit that includes only employees in vocational–technical institutes or occupational skill centers may be considered to constitute an appropriate bargaining unit if the history of bargaining in any such school district so justifies . . .

Extensive hearings were held before an examiner of

PERC. Witnesses called by Washington Federation of Teachers testified that the vocational–technical employees were dissatisfied and disillusioned with REA's representation; and that their interests were being sacrificed for those of the K through 12 teachers, who greatly outnumbered the vocational–technical employees. Witnesses called by REA testified that although the interests of the vocational–technical employees were sacrificed in the 1976–77 negotiations and settlement, there remained an active and viable relationship between the vocational–technical employees and REA. Following these hearings, on March 1, 1978, the executive director of PERC, in Decision 379–EDUC, dismissed Washington Federation of Teachers' petition.[1] On appeal to the full commission, the executive director's decision was reversed on June 9, 1978 by PERC in Decision 379–A–EDUC. PERC agreed with most of the executive director's analysis and findings but overturned his decision on the grounds that a prior bargaining history was not controlling where no election under the meet–and–confer statute had established REA as the bargaining agent for the vocational–technical employees. PERC subsequently ordered a severance and representation election.

Subsequent to the decision of PERC, respondent, REA, filed a petition for review in King County Superior Court of the decision of PERC. That petition, which sought to stay the PERC decision, was dismissed by the court. On appeal, this dismissal was sustained by the Court of Appeals. *Renton Educ. Ass'n v. State Pub. Empl. Relations Comm'n*, 24 Wn. App. 476, 603 P.2d 1271 (1979), *review denied*, 93 Wn.2d 1025 (1980).

Thereafter, the PERC–directed election was held and Washington Federation of Teachers was certified as the exclusive bargaining representative.

---

[1] PERC rules provide that the hearing examiner shall obtain a full and complete factual record upon which the executive director discharges his duty of ordering an election or dismissing the petition. The executive director's actions are subject to review by the whole commission. WAC 391–30–120, –124.

REA again petitioned the Superior Court. Although the trial court found that the record supported the decision of PERC, the court held that PERC incorrectly interpreted RCW 41.59.080 and overturned the order of PERC. The trial court reasoned that RCW 41.59.080(6) did not contemplate the severance of nonsupervisory certificated vocational–technical employees from the overall unit of nonsupervisory certificated employees unless there was no history of bargaining.

This court has stayed operation of the trial court's decision pending this appeal.

## II

■ The review procedures of the administrative procedure act must be adhered to in the instant case. This court's review, like that of the superior court, is under RCW 34.04.130(6) which provides:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
(f) arbitrary or capricious.

Our review of the administrative decision is limited to the record of the administrative tribunal itself, not to that of the superior court. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323–24, 646 P.2d 113 (1982). An administrative decision will be upheld on factual determinations under the clearly erroneous standard of RCW 34.04-.130(6)(e) unless the court's review of the entire record leaves it with the definite and firm conviction that a mistake has been made. When reviewing questions of law

under the error of law standard of RCW 34.04.130(6)(d), an appellate court may substitute its determination for that of the agency, although the agency's determination is entitled to substantial weight. *Franklin Cy.*, at 324–26. In an appeal of an administrative decision involving a mixed question of law and fact, the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency. *Franklin Cy.*, at 329–30.

Following these guidelines, this court must determine the appropriate construction of RCW 41.59.080, keeping in mind that the agency's determination is entitled to substantial weight, and then apply the law to the facts as found by the agency, unless found to be clearly erroneous.

The bargaining unit determination provisions of RCW 41.59.080 both confer and delimit PERC's unit determination authority under the Educational Employment Relations Act. RCW 41.59.080 initially sets forth the relatively conventional factors of unit determination:

> In determining, modifying or combining the bargaining unit, the commission shall consider the duties, skills, and working conditions of the educational employees; the history of collective bargaining; the extent of organization among the educational employees; and the desire of the educational employees . . .

These broad factors of unit determination are then constricted by subsection (1) which provides that a unit including nonsupervisory educational employees shall not be considered appropriate unless it includes all such nonsupervisory educational employees of the employer. However, subsection (6) reopens and expands upon subsection (1) by providing that a unit that includes only employees in vocational–technical institutes or occupational skill centers may be considered to constitute an appropriate bargaining unit if the history of bargaining in any such school district so justifies.

The executive director, with PERC concurring, interpreted RCW 41.59.080(6) as clearly contemplating that cir-

cumstances may exist that warrant severance of vocational–technical employees from a district–wide bargaining unit. PERC further concurred with the executive director's analysis that the conventional factors of unit determination warranting a severance are presumptively fulfilled in application of RCW 41.59.080(6).

The difference between the analysis of PERC and the executive director occurs in the treatment of "history of bargaining". The executive director dismissed the petition upon finding of a viable and active representation on behalf of the vocational–technical employees by REA. The trial court agreed with this analysis when it effectively held that RCW 41.59.080(6) did not contemplate the severance of vocational–technical employees when there existed a prior history of bargaining. PERC held that whether or not there was a viable relationship between the school district and an active employee organization recognized as the representative of the district–wide teacher unit was immaterial. We agree.

The Legislature is presumed to have known that vocational–technical faculties already existed when it enacted RCW 41.59 and can also be presumed to have known that the predecessor meet–and–confer statute precluded multiple bargaining units within school districts, so that vocational–technical employees had theretofore been included in the district–wide units.

The fact that REA's employees were heretofore included in a district–wide bargaining unit should not be determinative. The vocational–technical employees may reasonably be expected to make the best use of the representation available to them. REA's contention, accepted by the hearing officer and the trial court, would mandate that there would never be a case of appropriate separation and creation of a vocational–technical bargaining unit where vocational–technical employees are part of a preexisting district–wide bargaining unit. This interpretation of the statute cannot stand, for it would effectively preclude the possibility of the creation of separate bargaining units of

vocational–technical employees and make a nullity of the statute.

In our view, RCW 41.59.080(6) should be read as a grant of power to PERC to take into account past negotiating history as reflective of the existence of effective bargaining on behalf of the vocational–technical employees and as to whether there exist conflicts between the bargaining interest of vocational–technical employees and the K through 12 employees. RCW 41.59.080(6) leaves open for the facts of individual cases as to what history or past events will justify the creation of a separate bargaining unit. Here, PERC placed great emphasis on the fact that there had never been an election or other collective decision by the employees as to the appropriate bargaining unit or the bargaining representative. And PERC did not fail to consider the history of bargaining on behalf of vocational–technical employees. It held that the bare fact that such bargaining had gone on is not binding on PERC, in view of the lack of any prior opportunity for the employees themselves to exercise any choice in the matter. If the Legislature had wished to preclude a separate bargaining unit, they would have used language in subsection (6) like "unless there is a history of bargaining" or "unless the vocational–technical employees are already in a bargaining unit". In other words, the Legislature would have phrased this subsection in such a way that it did not constitute, as it does now, an open invitation for PERC to evaluate the history of bargaining in this school district.

PERC's determination of law is entitled to substantial weight and is a rational interpretation of legislative intent. We concur with its interpretation that RCW 41.59.080(6) requires PERC to review the bargaining history within the school district and determine whether it justifies creation of a separate bargaining unit for vocational–technical employees.

The power of determining whether the history of bargaining justifies that vocational–technical employees be a separate bargaining unit is vested in PERC, and the statute

presumes PERC to have expertise. So long as the record taken as a whole indicates that PERC has applied the statutory criteria in making its determination and has supported it with adequate findings, we will defer to its expertise. The weight to be given the various criteria that constitute a history of bargaining in a given case is for PERC, not this court.

In its order PERC concurred with the executive director's facts and analysis which recounted the history of bargaining between Renton School District and REA and the range of issues negotiated on behalf of the vocational-technical employees as a part of the larger bargaining unit.

PERC found that the evidence revealed a history of ineffective negotiations on behalf of the vocational-technical employees in the existing unit. Moreover, PERC found it significant that there had never been a representative election in the district-wide unit and that the vocational-technical employees constituted a distinct minority of the bargaining unit.

The record contains substantial evidence that there exist conflicts of interest or the threat thereof so as to prevent effective negotiations, and that there was notable dissatisfaction with the last contract where the interests of the vocational-technical employees were sacrificed for the benefit of K through 12 employees.

Without setting out the details, we find there is ample support for PERC's determination that the history of bargaining justified a severance and representation election.

The record establishes that PERC considered the appropriate factors of bargaining history and was justified in ordering a severance and representation election. The trial court held that the factual record developed before PERC was a sufficient basis for the decision of PERC. The facts, as found by PERC, supporting severance and a representation election are in accord with RCW 41.59.080 and meet the clearly erroneous standard of review and are upheld.

CONCLUSION

We find that PERC properly interpreted and applied RCW 41.59.080 when it held that the history of bargaining in the Renton School District justified that the employees of Renton Vocational–Technical Institute constitute an appropriate bargaining unit.

The trial court is reversed and the findings and order of PERC are reinstated.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOL-LIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.