2 P.3d 1022 (2000)
101 Wash.App. 283
Kem HUNTER, Appellant,
v.
UNIVERSITY OF WASHINGTON, an agency of the State of Washington, Respondent.
No. 44593-6-I.
Court of Appeals of Washington, Division 1.
June 26, 2000.
*1024 Gregory Mann Miller, Seattle, for Appellant.
Christine O. Gregoire, Atty. Gen., and Loretta M. Lamb, Asst. Atty. Gen., Seattle, for Respondent.
*1023 COLEMAN, J.
In this case we must decide whether the University of Washington is subject to the rule-making requirements set forth in the Administrative Procedure Act (APA) when promulgating regulations that impact tuition reductions for Vietnam veterans. The University imposed regulations for the veteran tuition reduction program that require students to be pursuing their first bachelors or first masters degrees and exempt students of certain professional schools from eligibility. The University's regulations affect Vietnam veteran students as a class and qualify a *1025 benefit that is conferred by law. They therefore are the type of regulation that is subject to public comment and rule-making procedures under the APA. Because the University's regulations were not adopted according to the rule-making requirements of the APA, they are invalid.

FACTS
Kem Hunter is a Washington resident who served as a Navy lieutenant in the Vietnam War. In 1997, Hunter applied and was accepted into both the law school and the Japanese studies masters degree program at the University of Washington. Because he was required to take only law courses during the first year of law school, Hunter decided to postpone acceptance into the Japanese studies program until the following year, when he planned to take concurrent courses in both programs.
The law school announced in its general bulletin that fee and tuition reductions may be available to Washington residents who served in Southeast Asia, and Hunter applied for the veteran tuition waiver. Hunter received the tuition waiver for two quarters, after which he was informed that it was available only to those veterans pursuing their first masters or first bachelors degrees. He was told that the professional schools of law, medicine, dentistry, and pharmacy are specifically excluded from the veteran tuition reduction program.
Hunter wrote to Tim Washburn, the director of admissions and records, requesting specific information to form the basis of a possible appeal. In Washburn's response, he stated that the requirement that veterans must be pursuing their first bachelors or masters degree was to provide the tuition exemption "to the broadest audience at a level where their studies would have most likely been disrupted if called to serve during the Vietnam conflict." Washburn concluded that "[t]he existing Southeast Asia tuition exemption policy restricting eligibility to undergraduate and graduate students pursuing their first degrees is University policy and there are no plans to modify the policy."
Three weeks later, Hunter filed a petition in superior court for review of agency action. After argument, the trial court did not take the position that the APA applied and instead ruled that a writ of certiorari should be issued to review the agency action. The trial court then dismissed the writ because it did not find that the agency action was arbitrary or capricious or contrary to law.
Hunter appeals, arguing that the University's regulations regarding veteran tuition waivers is subject to the rule-making requirements of the APA. He also contends that the University does not have the authority to impose the additional restrictions. Alternatively, he contends that even if review is not available under the APA, under certiorari review, the University's actions were arbitrary and capricious or contrary to its lawful authority.

DISCUSSION[1]
The Washington Legislature enacted the following statute, which encourages state schools to give tuition reductions to Vietnam veterans.
(1) The legislature finds that military and naval veterans who have served their country in wars on foreign soil have risked *1026 their own lives to defend both the lives of all Americans and the freedoms that define and distinguish our nation. The legislature also finds that veterans of the Vietnam conflict suffered during and after the war as the country anguished over its involvement in the conflict. It is the intent of the legislature to honor Vietnam veterans for the public service they have provided to their country. It is the further intent of the legislature that, for eligible Vietnam veterans, colleges and universities waive tuition and fee increases that have occurred since October 1, 1977.
(2) Subject to the limitations of RCW 28B.15.910, the governing boards of the state universities, the regional universities, The Evergreen State College, and the community colleges may exempt veterans of the Vietnam conflict who have served in the southeast Asia theater of operations from the payment of all or a portion of any increase in tuition and fees that occur after October 1, 1977, if the veteran qualifies as a resident student under RCW 28B.15.012.
(3) For the purposes of this section, "veterans of the Vietnam conflict" shall be those persons who have been on active federal service as a member of the armed military or naval forces of the United States between a period commencing August 5, 1964, and ending on May 7, 1975.
(4) This section shall expire June 30, 1999.[[2]]
RCW 28B.15.620. The statutory requirements for eligibility are that veterans must have served in the "southeast Asia theater of operations," they must have been in active federal service between August 5, 1964 and May 7, 1975, and they must qualify as resident students. RCW 28B.15.620. Under the statute, the University has the discretion to implement the tuition reduction program for Vietnam veterans and to determine the amount of tuition it will waive. RCW 28B.15.620. At issue are the University's additional eligibility restrictions requiring that veterans be pursuing their first bachelors or first masters degree and exempting from eligibility the students of the named professional schools.
The appellate court sits in the same position as the superior court when reviewing an agency's decision, applying the applicable standards of review in RCW 34.05.570 directly to the record. Department of Ecology v. Theodoratus, 135 Wash.2d 582, 589, 957 P.2d 1241 (1998). Here, we first determine whether the University's regulations are rules under the APA.

A. Characterization of the University's Restrictions

Hunter argues that the University's regulations regarding veteran tuition reductions satisfy the statutory requirements of a rule and are therefore subject to the APA. A "rule" is defined as "any agency order, directive, or regulation of general applicability... which establishes, alters, or revokes any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law[.]" RCW 34.05.010(16). A rule does not include, however, "rules of institutions of higher education involving standards of admission, academic advancement, academic credit, graduation and the granting of degrees, employment relationships, or fiscal processes." RCW 34.05.010(16)(iv). If a regulation falls within the statutory definition of a rule, it is treated as a rule. See Hillis v. Department of Ecology, 131 Wash.2d 373, 932 P.2d 139 (1997).
Here, the University's requirement that veterans be pursuing their first bachelors or first masters degrees and the exemption of the professional schools both apply to the entire class of veterans. A rule is one of "general applicability" if it applies to individuals only as members of a class, regardless of the size of the class. See William R. Andersen, The 1988 Washington Administrative Procedure ActAn Introduction, 54 Wash. L.Rev. 781, 790 & n. 43 (1989). Because the regulations affect Vietnam veterans as a class, they are of general applicability.
The University's regulations also satisfy the second requirement of a rule because they affect the right to receive a benefit conferred by law. Requiring that eligible *1027 veterans be pursuing their first bachelors or first masters degrees and excluding certain professional schools affects the right to receive a tuition reduction. Those requirements limit the group of statutorily eligible veterans able to receive the benefit of a tuition reduction. By limiting that group, the University has established, altered, or revoked "any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law[.]" RCW 34.05.010(16)(c).
The University's eligibility requirement is similar in effect to the Department of Ecology's policies and procedures considered in Hillis. In Hillis, the petitioners applied for water rights permits, which five years later had still not been processed. In order to accommodate the increasing number of water permit applications, the Department began processing them in batches based upon geographic watershed location, and it set criteria to determine the priorities of the applications. Hillis, 131 Wash.2d at 379, 932 P.2d 139. The plaintiffs asserted that the Department did not comply with rule-making procedures regarding its decisions as to what kinds of water applications should be given priority or the process that it used in its watershed assessments. Hillis, 131 Wash.2d at 397-98, 932 P.2d 139. The court stated that the benefit or privilege was the right to apply for a groundwater withdrawal permit and to have the application investigated and decided upon under the relevant statutory criteria. Hillis, 131 Wash.2d at 398-99, 932 P.2d 139. When the Department added priorities and prerequisites to its decisions, it affected the applicants' right to apply and have their applications investigated. Thus, the priorities and prerequisites constituted "qualifications or requirements" under the definition of a rule and, as such, were subject to rule-making procedures. Hillis, 131 Wash.2d at 399, 932 P.2d 139.
Under the reasoning in Hillis, the University's requirements are subject to the rule-making process of the APA. Like the prerequisites in Hillis, the University's regulations restrict the right of Vietnam veterans as a class to receive the statutory benefit of a tuition reduction. Thus, the regulations fall within the APA's definition of a rule.
In arguing against that result, the University offers two arguments. First, the University contends that its regulations involve fiscal processes and therefore are excluded from the definition of "rule" under RCW 34.05.010(15)(iv). Second, the University maintains that the tuition reduction was not conferred by law.
"Fiscal process" is defined neither by statute nor by case law. If a term is not statutorily defined, the term is given its ordinary or common law meaning. State v. Alvarez, 128 Wash.2d 1, 11, 904 P.2d 754 (1995). In determining the ordinary meaning of a term, a court may use a dictionary. See Zachman v. Whirlpool Fin. Corp., 123 Wash.2d 667, 671, 869 P.2d 1078 (1994); City of Bellevue v. Lorang, 92 Wash.App. 186, 193, 963 P.2d 198 (1998), reversed on other grounds, 140 Wash.2d 19, 992 P.2d 496 (2000).
According to the dictionary, "fiscal" means "of or relating to financial matters generally." Webster's Third New International Dictionary 857 (1969). Although the University may have considered financial matters when determining what type of degree or school would be eligible for the veteran tuition reduction, those decisions were not fiscal processes. It is unreasonable to suppose that the Legislature contemplated the inclusion of every tangential relation to financial matters in the term "fiscal process." It is more reasonable that the term includes the processes by which the University directly manages its finances. The administration of tuition reductions does not fall into the category of direct financial management of the University. Thus, the University's regulations were not fiscal processes exempted from the status of a rule.
In its second argument against construing its regulations as rules, the University maintains that because it has the discretion to confer the tuition benefit, a fortiori it has the discretion to restrict the benefit as it deems appropriate. Thus, the University reasons that because it has discretion both to give tuition reductions and to determine the *1028 amount waived, any benefit that veterans receive is conferred by the University rather than by the statute.
The University is mistaken in assuming that its ability to decide whether to confer tuition reductions translates into its ability to adopt further restrictions without complying with the rule-making procedures required by the APA.[3] The Legislature has clearly stated its intent that Vietnam veterans be honored with tuition reductions. Accordingly, once the University decides to grant Vietnam veterans a tuition reduction, that benefit is conferred by law.
Lastly, Hunter argues that the University does not have the statutory authority to impose the regulations because they add requirements beyond those of the statute. Although the Hillis court chose to resolve this question and determined that the policies and procedures adopted there were within the Department's discretion, we stop short of reaching a conclusion here because of the inadequacy of the agency record and lack of notice and comment. When an agency proposes a rule, it must state its reasons for the rule, its purpose, and its anticipated effects. RCW 34.05.320. "The rules it adopts should be justified and reasonable, with the agency having determined, based on common sense criteria established by the legislature, that the obligations imposed are truly in the public interest[.]" RCWA 34.05.328 Legislative Findings, 1995 ch. 403(1)(b). Although the University stated at oral argument that the regulations were necessary to stay within the statutory cap on tuition waivers,[4] neither it nor its decision-making record explains the necessity of limiting the reductions to stay within the cap or why it must exempt the named professional schools from eligibility in order to fulfill that objective. Without an adequate record, we cannot determine whether the University's regulations furthered the statement of legislative intent to honor Vietnam veterans or whether they were necessary to stay within the waiver cap.
Furthermore, the University's regulations have not been subjected to public comment, and we cannot speculate as to what effect public comment may have on the rules ultimately adopted. See United States Telephone Ass'n v. Federal Communications Comm'n, 28 F.3d 1232, 1233-34 (D.C.Cir. 1994) (holding that because the rule had not been subjected to notice and comment, it would be premature to decide the agency's authority to adopt the rule). The purpose of rule-making procedures is to give notice to the public of the proposed rule and to allow it to comment on the proposal. Hillis v. Department of Ecology, 131 Wash.2d 373, 399, 932 P.2d 139 (1997). "Technically sound, lawful, and politically responsive rules are more likely if there is ample advance notice of the terms of proposed rules" and a full opportunity for, and consideration of, public comment. Andersen at 795. Thus, questions concerning the scope of the University's authority to impose regulations beyond those listed in the statute must await a future case when a decision can be made with the benefit of a complete agency record and proper rule-making procedures.
The University acknowledges that its requirements for veteran tuition reductions were not adopted according to proper rule-making procedures. Having not been properly adopted, the regulations are invalid.[5]

*1029 B. Attorney Fees and Costs

Hunter argues that he is entitled to attorney fees and costs for the review conducted by both the Superior Court and this court.[6] Under RCW 4.84.350(1), a prevailing qualified party[7] in a judicial review of agency action shall be awarded fees and other expenses, including reasonable attorney fees unless the court finds that the agency's action was "substantially justified" or that circumstances make an award unjust.
To prove the affirmative defense of substantial justification, the University must show that its regulation was "justified to a degree that could satisfy a reasonable person." Plum Creek Timber Co. v. Washington State Forest Practices Appeals Bd., 99 Wash.App. 579, 595, 993 P.2d 287, 292 (2000). As we have previously indicated, the paucity of the University's record prevents it from substantially justifying its actions. Furthermore, the University has not shown that an award would be unjust based on the circumstances.
A party is considered to prevail if the party "obtained relief on a significant issue that achieves some benefit that the qualified party sought." RCW 4.84.350(1). Here, Hunter is a prevailing party because he has succeeded in his argument that the University's restrictions on veteran tuition reductions are invalid. Accordingly, we remand for a determination by the Superior Court of attorney fees and costs, both for the proceedings below and on appeal.
BAKER, C.J., and BECKER, J., concur.
NOTES
[1] As a preliminary matter, both Hunter and the University request that this court supplement the agency record with certain additional documents. RCW 34.05.562 allows a court to receive evidence in addition to that contained in the agency record "only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding" (1) the propriety of the agency action, (2) the propriety of the decision-making process, or (3) material facts in proceedings not required to be determined in the agency record.

Hunter has included an affidavit which the University requests be stricken because it does not comply with RCW 34.05.562. Brief of Respondent, at 32 n. 14. Because the contents of the affidavit reiterate those of the agency record, it is not needed for the resolution of any issue presented here. Thus, we grant the motion to strike.
The University also requests that this court accept into the record the declaration of Steven G. Olswang, a University official. His declaration states that Washburn had authority to act in matters regarding tuition. Because a reviewing court considers the authority with which the agency acted, we will allow Olswang's declaration to supplement the record.
[2] In April 1999, the Legislature indefinitely renewed this statute.
[3] An agency's interpretation of law may be entitled to deference "to the extent that it falls within the agency's expertise in a special area of the law," which generally means that the statute pertains to the agency's authority and how it bases its policy decisions on that statute. Plum Creek Timber Co. v. Washington State Forest Practices Appeals Bd., 99 Wash.App. 579, 588, 993 P.2d 287, 292 (2000); see also Renton Education Ass'n v. Public Employment Relations Comm'n, 101 Wash.2d 435, 443, 680 P.2d 40 (1984). Here, however, the issue is whether the benefit is conferred by the Legislature or by the University. That question is purely one of law, which is not accorded the typical deference as an agency's interpretation of its own policy-making authority. See 3 Charles H. Koch, Administrative Law & Practice §§ 12.30, 12.32 (2d ed.1997).
[4] RCW 28B.15.910 states that the total amount of operating fees revenue waived cannot exceed 21 percent of the University's total gross authorized operating fees revenue.
[5] Because we hold that the regulations are invalid, it is unnecessary to decide whether they are arbitrary and capricious or contrary to law under certiorari review.
[6] Hunter acknowledges that tort claims are required to be filed with the office of risk management prior to suing for tort damages and therefore does not request consequential damages sounding in tort. He submits that contract damages are not precluded and directs our attention to the contract claims that he argued in Superior Court. But because he has not advanced those claims on appeal, we decline to review their merits. RAP 10.3(a).
[7] A "qualified party" is "an individual whose net worth did not exceed one million dollars at the time the initial petition for judicial review was filed." RCW 4.84.340(5).