[No. 84380-5.   En Banc.]
Argued May 17, 2011.      Decided June 16, 2011.

STEPHEN K. EUGSTER, *Appellant*, v. THE STATE OF WASHINGTON ET AL., *Respondents*.

*Stephen K. Eugster*, pro se.

*Robert M. McKenna, Attorney General,* and *James K. Pharris* and *Anne E. Egeler, Deputies Solicitor General,* for respondents.

¶1 FAIRHURST, J. — Stephen K. Eugster, pro se, argues that Washington's process of electing Court of Appeals judges and assigning cases to three-judge panels violates article I, section 19 of the Washington State Constitution, which provides that "[a]ll Elections shall be free and equal." We affirm the trial court's decision to dismiss Eugster's case for failure to state a claim upon which relief can be granted.

## I. FACTUAL HISTORY

¶2 The Washington State Court of Appeals was created by a constitutional amendment approved by voters in 1968. LAWS OF 1969, State Measures, Amend. 50, at 2975 (codified as CONST. art. IV, § 30). The amendment provided in part that "[t]he number, manner of election, compensation, terms of office, removal and retirement of judges of the court of appeals shall be as provided by statute." CONST. art. IV, § 30(4). Pursuant to this provision, chapter 2.06 RCW established a single Court of Appeals with three divisions. RCW 2.06.010, .020. Each division is divided into three districts made up of one or more counties, and each of these districts elects a set number of judges to the Court of Appeals. RCW 2.06.020.[1] According to Eugster, the popula-

---

[1] Currently, RCW 2.06.020 provides:

The court shall have three divisions, one of which shall be headquartered in Seattle, one of which shall be headquartered in Spokane, and one of which shall be headquartered in Tacoma:

(1) The first division shall have twelve judges from three districts, as follows:

(a) District 1 shall consist of King county and shall have eight judges;

(b) District 2 shall consist of Snohomish county and shall have two judges; and

(c) District 3 shall consist of Island, San Juan, Skagit, and Whatcom counties and shall have two judges.

(2) The second division shall have eight judges from the following districts:

tion per judge in the various districts ranges from 201,750 to 467,500.

¶3 The Court of Appeals judges hear cases in three-judge panels. RCW 2.06.040. The precise procedure for assigning judges and cases to these panels varies among the divisions, but each division's process emphasizes equitably sharing workload and randomly assigning cases so that no particular litigant's or judge's interest is favored.

## II. PROCEDURAL HISTORY

¶4 Eugster filed a complaint in Thurston County Superior Court seeking a declaratory judgment that Washington's Court of Appeals violates the Washington State Constitution. He named as defendants the State of Washington, the Washington Court of Appeals and its divisions, and the individual judges of the Court of Appeals. Eugster also moved for partial summary judgment on the issue of whether article I, section 19 of the Washington Constitution applies to the election of Court of Appeals judges. The defendants countered by moving to dismiss under CR 12(b)(6) for failure to state a claim upon which relief can be granted and moving to dismiss the individually named judges as defendants.

¶5 The superior court denied Eugster's summary judgment motion and granted both of the defendants' motions. Eugster moved for our direct review, challenging only the denial of his summary judgment motion and grant of the

---

(a) District 1 shall consist of Pierce county and shall have three judges;

(b) District 2 shall consist of Clallam, Grays Harbor, Jefferson, Kitsap, Mason, and Thurston counties and shall have three judges;

(c) District 3 shall consist of Clark, Cowlitz, Lewis, Pacific, Skamania, and Wahkiakum counties and shall have two judges.

(3) The third division shall have five judges from the following districts:

(a) District 1 shall consist of Ferry, Lincoln, Okanogan, Pend Oreille, Spokane, and Stevens counties and shall have two judges;

(b) District 2 shall consist of Adams, Asotin, Benton, Columbia, Franklin, Garfield, Grant, Walla Walla, and Whitman counties and shall have one judge;

(c) District 3 shall consist of Chelan, Douglas, Kittitas, Klickitat, and Yakima counties and shall have two judges.

defendants' CR 12(b)(6) motion. The State "[r]eluctantly" supported the motion for direct review because it would be "awkward" for the Court of Appeals to hear a challenge to its own organization. Answer to Statement of Grounds for Direct Review at 2. We granted review.

## III. ANALYSIS

¶6 We review a trial court's decisions on CR 12(b)(6) and summary judgment motions de novo. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 280, 242 P.3d 810 (2010); *Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 376, 166 P.3d 662 (2007). The trial court should grant a CR 12(b)(6) motion to dismiss "only 'if it appears beyond a reasonable doubt that no facts exist that would justify recovery.'" *Atchison*, 161 Wn.2d at 376 (quoting *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)). Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment motion, we view facts and inferences in the light most favorable to the nonmoving party. *Fitzpatrick v. Okanogan County*, 169 Wn.2d 598, 605, 238 P.3d 1129 (2010). We presume statutes are constitutional, and the challenging party bears the burden of establishing a statute's unconstitutionality beyond a reasonable doubt. *Carlisle v. Columbia Irrigation Dist.*, 168 Wn.2d 555, 578, 229 P.3d 761 (2010) (citing *Brower v. State*, 137 Wn.2d 44, 52, 969 P.2d 42 (1998)).

¶7 Eugster argues that article I, section 19 of the Washington Constitution requires the one-person, one-vote principle to apply to judicial elections. The equal protection clause of the United States Constitution requires that voting districts in legislative and administrative elections be apportioned so that each district has, as nearly as practicable, an equal population—the so-called one-person, one-vote principle. *Reynolds v. Sims*, 377 U.S. 533, 568, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964); *Hadley v. Junior Coll.*

*Dist.*, 397 U.S. 50, 52, 90 S. Ct. 791, 25 L. Ed. 2d 45 (1970). The United States Supreme Court has summarily affirmed a Louisiana district court decision holding that the one-person, one-vote principle does not apply to judicial elections. *Wells v. Edwards*, 347 F. Supp. 453 (M.D. La. 1972), *aff'd*, 409 U.S. 1095, 93 S. Ct. 904, 34 L. Ed. 2d 679 (1973). The district court reasoned that "[t]he primary purpose of one-man, one-vote apportionment is to make sure that each official member of an elected body speaks for approximately the same number of constituents. But . . . '[t]he State judiciary, unlike the legislature, is not the organ responsible for achieving representative government.'" *Id.* at 455-56 (quoting *N.Y. State Ass'n of Trial Lawyers v. Rockefeller*, 267 F. Supp. 148, 153 (S.D.N.Y. 1967)).

¶8 Eugster does not make a federal equal protection claim. Rather, in Eugster's view, the one-person, one-vote principle must extend to judicial elections under the mandate of article I, section 19 that "[a]ll Elections shall be free and equal." Eugster devotes virtually no argument to why the words "free and equal" require one-person, one-vote apportionment for judicial elections, instead focusing on the general premise that article I, section 19 should apply to judicial elections.

¶9 In interpreting constitutional provisions, "'[t]he words of the text will be given their common and ordinary meaning, as determined at the time they were drafted.'" *Mills v. W. Wash. Univ.*, 170 Wn.2d 903, 914, 246 P.3d 1254 (2011) (quoting *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004)). Other provisions of the Washington Constitution, passed contemporaneously with article I, section 19, dealt explicitly with the issue of apportionment of voting districts,[2] strongly suggesting the

---

[2] Former CONST. art. II, § 3 (1899) (requiring reapportionment of the state house of representatives and senate after every census), *repealed by* Amend. 74, Substitute S. J. Res. 103, at 2202 (Nov. 8, 1983); CONST. art. II, § 6 ("the senators shall be elected by single districts of convenient and contiguous territory . . . and no representative district shall be divided in the formation of a senatorial district"); CONST. art. IV, § 3 ("[t]he judges of the supreme court shall be elected by the qualified electors of the state at large at the general state election"); CONST. art. IV, § 5 ("There shall

framers considered numerical apportionment to be a separate issue from whether an election was "free and equal." At the federal level, equal protection was not held to require one-person, one-vote apportionment until the 1960s, approximately 70 years after our constitution's passage. *See Reynolds*, 377 U.S. 533; *see also* ROBERT F. UTTER & HUGH D. SPITZER, THE WASHINGTON STATE CONSTITUTION: A REFERENCE GUIDE 77 (2002) ("For most of the nation's history, the U.S. Supreme Court had not imposed the one-man one-vote requirement under the U.S. Constitution."). Eugster presents no evidence that the words "free and equal" were understood to require one-person, one-vote apportionment in 1889.

¶10 Washington cases have never held that article I, section 19 requires substantial numerical equality between voting districts.[3] Rather, we have historically interpreted article I, section 19 as prohibiting the complete denial of the right to vote to a group of affected citizens. *See, e.g., Malim v. Benthien*, 114 Wash. 533, 196 P. 7 (1921) (statute violated article I, section 19 because landowners outside a diking and drainage district were subject to its assessments but not able to vote on the district's commissioners); *Foster v. Sunnyside Valley Irrigation Dist.*, 102 Wn.2d 395, 405-11, 687 P.2d 841 (1984) (under article I, section 19, owners of subdivided land could not be excluded entirely from irrigation district board elections, although residents who bore a greater burden of the district's assessments could be given more voting power). No voter is shut out of Court of Appeals elections in the manner that our cases have rejected; every Washington voter has the opportunity to vote for at least one Court of Appeals judge.

---

be in each of the organized counties of this state a superior court for which at least one judge shall be elected by the qualified electors of the county at the general state election.").

[3] While Eugster implies that *Story v. Anderson*, 93 Wn.2d 546, 549, 611 P.2d 764 (1980) held that one-person, one-vote was required by article I, section 19, *e.g.*, Br. of Appellant at 13, that case actually applied the United States Constitution's equal protection clause.

¶11 Furthermore, we agree with the logic of *Wells* that voting districts need not be numerically equivalent for judicial elections. The judiciary has fundamental obligations of impartiality and independence that do not apply to elected representatives of the legislative branch. *See generally* CJC pmbl.; CJC Canon 1. The fact that judges are not utterly isolated from popular sentiment is not enough to make them equivalent to legislative and administrative elected officials, whose core duties are to speak for and carry out their constituents' interests. Therefore, while Eugster is undoubtedly correct that article I, section 19 applies in a general way to judicial elections, Eugster fails to establish that the words "free and equal" require voting districts with equal populations in the unique context of the Court of Appeals.[4]

¶12 Eugster also argues that the Court of Appeals' system of assigning judges violates article I, section 19 because each three-judge panel does not necessarily contain a judge from each district, leading some districts' judges to have a greater influence on the development of the common law than others. At best, Eugster makes a case for some kind of vote dilution. But if taken to its logical extreme, Eugster's argument would invalidate any delegation of elected officials' duties. Voters could claim, for example, that their votes were diluted simply because their local representatives did not sit on a sufficient number of committees. The current system is a good faith attempt to include judges from all regions of our state, randomly assigning cases so that no particular litigant or judge can control the docket. Eugster has not shown that this system violates our constitutional right to free and equal elections.

---

[4] It is worth noting that Eugster makes no claim that the Court of Appeals divisions and districts are drawn in such a way to systematically exclude any particular group of voters from an election. Separate from the one-person, one-vote principle, the United States Constitution's equal protection clause also requires that "district lines must not be drawn in such a way as to invidiously dilute the voting strength of a particular racial or political element of the voting population." *Story*, 93 Wn.2d at 549. The question of whether article I, section 19 contains a similar requirement is not before us.

¶13 " 'Deeply embedded traditional ways of conducting government cannot supplant the Constitution or legislation, but they give meaning to the words of a text or supply them.' " *Carrick v. Locke*, 125 Wn.2d 129, 136, 882 P.2d 173 (1994) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610, 72 S. Ct. 863, 96 L. Ed. 1153 (1952) (Frankfurter, J., concurring)). The Court of Appeals has been elected by districts drawn along county lines for over 40 years. Washington history, case law, and logic suggest that these districts need not be numerically equal for our elections to be "free and equal" under article I, section 19. Eugster fails to meet his burden of proving that the statutes establishing Washington's Court of Appeals are unconstitutional.

## IV. CONCLUSION

¶14 We affirm the trial court's decision granting respondents' CR 12(b)(6) motion to dismiss and denying Eugster's motion for partial summary judgment.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, J.M. JOHNSON, STEPHENS, and WIGGINS, JJ., concur.