IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| FISH AND WILDLIFE OFFICERS' GUILD, | ) ) ) | No. 72104-6-I |
| Respondent, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| WASHINGTON DEPARTMENT OF FISH AND WILDLIFE, | ) ) ) ) | |
| Appellant. | ) | FILED: December 7, 2015 |

SCHINDLER, J. — The right of state employees to collective bargaining is governed by statute. The Personnel System Reform Act of 2002 (PSRA), chapter 41.80 RCW, requires exclusive bargaining representatives of bargaining units with fewer than 500 employees to negotiate a master collective bargaining agreement (CBA) as a coalition. The PSRA requires the representatives for all bargaining units to bargain as a coalition for health care benefits. The PSRA sets forth the rules for certification of an employee organization as the exclusive bargaining representative for the employees of a bargaining unit. If a master CBA is in effect when an employee organization of fewer than 500 employees is certified, that agreement shall apply and "[n]othing in this section requires the parties to engage in new negotiations during the term of that agreement."[1]

---

[1] RCW 41.80.080(2)(a).

The Fish and Wildlife Officers' Guild (FWOG) filed an unfair labor practice complaint asserting the state of Washington (State) refused to bargain wages and health care benefits. The Public Employment Relations Commission (PERC) concluded that when it certified FWOG as the exclusive bargaining representative of approximately 94 employees, the coalition master CBA for the 2011-2013 biennium was in effect and applied. PERC ruled the State did not alter the status quo or commit an unfair labor practice by refusing to engage in collective bargaining with FWOG and negotiate a new agreement on wages and health care benefits. The superior court reversed the PERC decision. The Washington Department of Fish and Wildlife appeals the superior court order. FWOG contends PERC erroneously interpreted and applied the PSRA. We reverse the superior court and affirm the PERC decision.

## FACTS

The facts are undisputed. The Washington Federation of State Employees, AFSCME,[2] Council 28, AFL-CIO[3] (WFSE), represented a number of bargaining units including the Washington Department of Fish and Wildlife enforcement officers, bargaining unit RU-538. The master collective bargaining agreement (CBA) between WFSE and the state of Washington (State) for the 2009-2011 biennium expired on June 30, 2011.

During 2010 and early 2011, WFSE and the State negotiated a successor master CBA for the next biennium, July 1, 2011 through June 30, 2013. On December 14, 2010, WFSE and the State tentatively agreed to a three percent salary reduction for all bargaining unit employees effective July 1, 2011.

---

[2] American Federation of State, County, and Municipal Employees.

[3] American Federation of Labor-Congress of Industrial Organizations.

2

On January 5, 2011, the State and the coalition of bargaining units with fewer than 500 employees agreed to a master CBA that included a three percent salary reduction for the 2011-2013 biennium effective July 2, 2011.

The State also negotiated an agreement with a coalition of all exclusive bargaining representatives (Health Care Coalition) to reduce the health care contributions paid by the State. On December 2, 2010, the State and the Health Care Coalition agreed to a reduction in the amount the State contributed for health care premiums from 88 percent to 85 percent effective January 1, 2012.

WFSE scheduled meetings with bargaining unit employees on the tentative master CBA. WFSE posted the tentative master CBA on its website with a description of the three percent wage reduction and the change in health care contributions agreed to by the Health Care Coalition. On January 24, 2011, WFSE mailed ballots to members. On February 17, 2011, WFSE announced the bargaining unit members voted to ratify the 2011-2013 master CBA that included a three percent reduction in wages and a reduction in health care benefits.[4]

On March 4, 2011, the Fish and Wildlife Officers' Guild (FWOG) filed a petition with the Public Employment Relations Commission (PERC) to represent approximately 94 "full time and regular part time employees in the Enforcement Program" of the Washington Department of Fish and Wildlife. PERC scheduled a unit determination hearing for June 7, 2011.

On May 25, the legislature approved the 2011-2013 WFSE master CBA and the 2011-2013 coalition master CBA reducing the wages paid by three percent. ENGROSSED SECOND SUBSTITUTE H.B. 1087, 62nd Leg., 1st Spec. Sess. (Wash. 2011).

---

[4] The master coalition also ratified the 2011-2013 CBA.

The legislature also approved the Health Care Coalition agreement reducing the amount the State contributed to employee health care premiums from 88 percent to 85 percent effective January 1, 2012. ENGROSSED SECOND SUBSTITUTE H.B. 1087, 62nd Leg., 1st Spec. Sess. (Wash. 2011).

That same day, on May 25, the legislature adopted Engrossed Substitute Senate Bill (ESSB) 5860 declaring an emergency and reducing the base salaries for the 2011-2013 biennium for all executive, legislative, and judicial branch State employees by three percent. ESSB 5860, 62nd Leg., 1st Spec. Sess. (Wash. 2011).

On June 24, PERC issued an "Interim Certification" of FWOG as the exclusive bargaining representative for a bargaining unit of approximately 94 Fish and Wildlife officers.

On June 28, FWOG sent a letter to the director of the Financial Management Labor Relations Office (LRO Director) "to verify that the employer understands the need to maintain the status quo throughout this period and up until the State reaches a Collective Bargaining Agreement with the Guild." FWOG asserts the WFSE master CBA that the Fish and Wildlife officers previously agreed to and ratified did not apply after WFSE disclaimed representation on June 6, 2011. FWOG demanded collective bargaining on "a new labor agreement" on wages and benefits.

In response, the LRO Director states that because the coalition master CBA was in effect for the 2011-2013 biennium when the bargaining unit was certified, that agreement applied to bargaining unit employees.

> There is a current collective bargaining agreement in place for the Coalition of Unions, which I've attached for your reference. Article 1.2 of that master agreement provides:

If the Public Employment Relations Commission certifies a new bargaining unit in general government during the term of this Agreement and the exclusive bargaining representative represents fewer than a total of five hundred (500) employees, the terms of this Agreement will apply. The Employer agrees to enter into negotiations regarding mandatory subjects with the newly added group to discuss any bargaining unit specific concerns which are not addressed in this Agreement.

You raise the issue of the 3% compensation reduction. The master collective bargaining agreement in place for the 2011-2013 Coalition of Unions agreement provides for a 3% reduction in pay and offsetting temporary salary reduction leave. The compensation reduction contained in the master agreement has been approved and funded by the legislature. The same is true for the 2011-2013 Washington Federation of State Employees (WFSE) master agreement.

The LRO Director states that under the PSRA, the employer did not have "the ability to bargain over legislatively imposed pay reductions, nor does it have the ability to bargain a new agreement between the State and the Guild" for the 2011-2013 biennium. However, the LRO Director agreed that under the PSRA, the State would negotiate "subjects that are unique to [Fish and Wildlife officers] that are not addressed in the Coalition agreement."[5]

RCW 41.80.020(2)(a) establishes that unions with fewer than 500 employees shall negotiate with the State for one master collective bargaining agreement, which covers all such unions. The statute further provides that the Governor's designee and the exclusive representative or representatives are authorized to enter into supplemental bargaining of agency-specific issues for inclusion in, or as an addendum to, the master collective bargaining agreement, subject to the parties' agreement regarding the issues and procedures for supplemental bargaining.

---

[5] The LRO Director also noted the legislature adopted ESSB 5860 declaring an emergency and directing a "3% cut" in wages. The letter states, in pertinent part:

RCW 41.80.040 prohibits bargaining over actions deemed "necessary to carry out the mission of the state and its agencies during [an] emergenc[y]." And, of course, pursuant to RCW 41.80.020 (6), the terms of a collective bargaining agreement may not conflict with a statute.

(Alterations in original.)

On July 1, 2011, the State implemented the three percent wage reduction according to the terms of the master CBAs, the coalition master CBA, and ESSB 5860 for all State employees. The reduction in the amount the State contributed to health care premiums was scheduled to take effect on January 1, 2012.

On November 9, 2011, FWOG filed an unfair labor practice complaint with PERC. The complaint alleged the State interfered with employee rights by refusing to engage in collective bargaining with FWOG and unilaterally reducing wages and health care benefits.[6]

FWOG and the State entered into a joint stipulation of facts. FWOG and the State filed cross-motions for summary judgment on whether the State committed an unfair labor practice by refusing to engage in collective bargaining with FWOG on wages and health care benefits. The PERC hearing examiner granted the State's motion for summary judgment. The decision states that "under RCW 41.80.010(2)(a), upon certification, the union became a party to the coalition collective bargaining agreement and was not entitled to bargain a separate agreement on wages and health benefits." The hearing examiner ruled as a matter of law, the State "did not unilaterally change wages or health benefits or breach its good faith bargaining obligations over wages and health benefits." FWOG appealed the hearing examiner decision.

PERC affirmed the decision of the hearing examiner. Decision 11394-B - PSRA, No. 24387-U-11-6249 (Wash. Pub. Emp't Relations Comm'n Sept. 5, 2013). PERC rejected the argument that the hearing examiner decision violated the status quo principles under the Public Employees' Collective Bargaining Act (PECBA), chapter

---

[6] FWOG also alleged the State changed paid release time and insisted to impasse on ground rules. The superior court affirmed the PERC decision to dismiss these allegations. Neither the State nor FWOG appeal dismissal of these allegations.

41.56 RCW. PERC concluded "the unique features of Chapter 41.80 RCW" dictate "a

different result."

> In essence, the union requests that the status quo principles applicable under Chapter 41.56 RCW apply to Chapter 41.80 RCW. The status quo under Chapter 41.56 RCW would have been the collective bargaining agreement negotiated between the employer and the WFSE and that status quo would have continued until the employer and the union negotiated a new agreement. However, the unique features of Chapter 41.80 RCW require a different result.

PERC decided that after certifying FWOG as the exclusive bargaining

representative of approximately 94 Fish and Wildlife officers, the coalition master CBA

established the status quo, and FWOG was not entitled to negotiate a new master CBA

on wages or health care benefits. The PERC decision states, in pertinent part:

> The bargaining unit employees were covered by the WFSE master agreement at the time the union filed its petition. During the pendency of the representation petition, the status quo wages, hours, and other terms and conditions of employment were set by the WFSE master agreement. The employer was obligated to maintain the status quo until the union was certified as the exclusive bargaining representative. Once the union was certified as the exclusive bargaining representative, the WFSE master agreement no longer applied because the union represented fewer than 500 employees.
>
> The union was not entitled to negotiate a separate master collective bargaining agreement. If the employees had chosen to join a union that represented more than 500 employees, upon ratification, the employees would have been covered by that master collective bargaining agreement. RCW 41.80.010(2)(a) and 41.80.080(2)(a). In this case, the employees chose to be represented by a union that represented fewer than 500 employees. When the union was certified, the coalition collective bargaining agreement was in effect and became the status quo. Thus, the employees were covered by the coalition agreement and will be required to bargain successor agreements as part of the coalition.

PERC affirmed the dismissal of the allegation that the State violated RCW

41.80.110 by refusing to bargain with FWOG on wages and health care benefits. The

PERC decision states, in pertinent part:

> The union did not represent more than 500 employees and was required to bargain as part of the coalition. The union was not entitled to negotiate a separate master collective bargaining agreement or agreement on health benefits. Upon certification, the status quo for employee wages, hours, and terms and conditions of employment became the coalition collective bargaining agreement. The employer did not unilaterally change the status quo on wages, health benefits, or paid release time. The employer did not insist to impasse upon ground rules.

FWOG filed an appeal of the PERC decision in superior court. The court reversed the PERC decision that the State did not commit an unfair labor practice. The court concluded PERC erred in concluding the coalition master CBA applied. The court ruled that under general contract principles, the State had a duty to engage in collective bargaining with FWOG on wages and health care benefits. The State appeals.

## ANALYSIS

The State argues the superior court erred in reversing the PERC decision. FWOG contends PERC erroneously interpreted the PSRA in concluding the State did not commit an unfair labor practice.

In reviewing an agency decision, we sit in the same position as the superior court and apply the standards of the Administrative Procedure Act, chapter 34.05 RCW. Pasco Police Officers' Ass'n v. City of Pasco, 132 Wn.2d 450, 458, 938 P.2d 827 (1997). Accordingly, our review is limited to the record of the administrative tribunal and the PERC decision, not the decision of the hearing examiner. City of Vancouver v. Pub. Emp't Relations Comm'n, 107 Wn. App. 694, 703, 33 P.3d 74 (2001).

A reviewing court may grant relief only if the party challenging the agency decision shows that the order is invalid for one of the reasons set forth at RCW 34.05.570(3). Yakima Police Patrolmen's Ass'n v. City of Yakima, 153 Wn. App. 541,

553, 222 P.3d 1217 (2009). RCW 34.05.570(3)(d) requires relief from the agency order when the decision is based on an erroneous interpretation or application of the law.

We review an agency order granting summary judgment de novo. Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005). Unchallenged and stipulated facts are verities on appeal. Fuller v. Dep't of Emp't Sec., 52 Wn. App. 603, 605, 762 P.2d 367 (1988).

The State argues the right of State employees to engage in collective bargaining is governed by statute, and the specific and unique provisions of the PSRA control. The State asserts that under the statutory provision for negotiation and ratification of a master CBA, RCW 41.80.010(2)(a); and the statute that sets forth the rules following certification of an employee organization as a new bargaining representative, RCW 41.80.080(2)(a); the State did not commit an unfair labor practice by refusing to engage in collective bargaining with FWOG on wages and health care benefits for the 2011-2013 biennium. FWOG contends that under the plain language of the PSRA, the State committed an unfair labor practice by refusing to bargain and by interfering with the employees' right to negotiate a new CBA.

Interpretation or application of the law by an agency is reviewed de novo. Pasco Police, 132 Wn.2d at 458. Our objective is to ascertain and give effect to legislative intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Statutory interpretation begins with the plain meaning of the statute. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). The "plain meaning" of a statute is discerned from the ordinary meaning of the language at issue as well as the context of the statute in which that provision is found, related

provisions, and the statutory scheme as a whole. Lake, 169 Wn.2d at 526. " 'Statutes are to be read together, whenever possible, to achieve a harmonious total statutory scheme.' " In re Bankr. Petition of Wieber, 182 Wn.2d 919, 926, 347 P.3d 41 (2015)[7] (quoting State ex rel. Peninsula Neighborhood Ass'n v. Dep't of Transp., 142 Wn.2d 328, 342, 12 P.3d 134 (2000)). "While we look to the broader statutory context for guidance, we 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.' " Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). "Where the language of a statute is clear, legislative intent is derived from the language of the statute alone." City of Spokane v. Rothwell, 166 Wn.2d 872, 876, 215 P.3d 162 (2009). If the statute is unambiguous, the inquiry ends. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

When construing a collective bargaining statute, we give "substantial weight and great deference" to PERC's interpretation in view of its expertise in the area of collective bargaining. City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604, 119 Wn.2d 373, 381-82, 831 P.2d 738 (1992). However, we may substitute our interpretation for that of the agency. Chi. Title Ins. Co. v. Office of the Ins. Comm'r, 178 Wn.2d 120, 133, 309 P.3d 372 (2013).

The national Labor Relations Act specifically exempts state and local government employers from coverage. 29 U.S.C. § 152(2) ("The term 'employer' . . . shall not include . . . any State or political subdivision thereof."). Congress left the decision concerning collective bargaining rights for public employees to the states. See also City

---

[7] Internal quotation marks omitted.

of Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469, Yakima Fire Fighters Ass'n, 117 Wn.2d 655, 666-67, 818 P.2d 1076 (1991).

In 1967, the legislature adopted the Public Employees' Collective Bargaining Act (PECBA), chapter 41.56 RCW. LAWS OF 1967, Ex. Sess., ch. 108, § 1. The PECBA gives cities, counties, and political subdivisions of the State the right to engage in collective bargaining with employees on wages, hours, and working conditions. However, the PECBA gives the right to engage in collective bargaining to only certain limited categories of State employees. See, e.g., RCW 41.56.473 (Washington State Patrol officers); RCW 41.56.027 and RCW 47.64.120 (Washington State Department of Transportation Ferries Division employees).

In 2002, the legislature adopted the PSRA, chapter 41.80 RCW. LAWS OF 2002, ch. 354, § 301. The legislature substantively restructured the administration and collective bargaining rights for State employees.

The PSRA of 2002 gives all State employees the right to engage in collective bargaining with "the governor or governor's designee." RCW 41.80.010(1), .020(1). "Except as may be specifically limited by this chapter," the PRSA gives State employees the right to organize and "bargain collectively through representatives of their own choosing." RCW 41.80.050.

The PSRA adopts a unique structure that mandates the negotiation of a master CBA. RCW 41.80.010(2)(a). Exclusive bargaining representatives for bargaining units with fewer than 500 members must bargain as a coalition for wages, hours, and other terms and conditions of employment. RCW 41.80.010(2)(a). RCW 41.80.010(2)(a)

states:

> If an exclusive bargaining representative represents more than one bargaining unit, the exclusive bargaining representative shall negotiate with each employer representative as designated in subsection (1) of this section one master collective bargaining agreement on behalf of all the employees in bargaining units that the exclusive bargaining representative represents. <u>For those exclusive bargaining representatives who represent fewer than a total of five hundred employees each, negotiation shall be by a coalition of all those exclusive bargaining representatives. The coalition shall bargain for a master collective bargaining agreement covering all of the employees represented by the coalition. The governor's designee and the exclusive bargaining representative or representatives are authorized to enter into supplemental bargaining of agency-specific issues for inclusion in or as an addendum to the master collective bargaining agreement, subject to the parties' agreement regarding the issues and procedures for supplemental bargaining.</u> This section does not prohibit cooperation and coordination of bargaining between two or more exclusive bargaining representatives.[8]

RCW 41.80.020 defines the scope of bargaining. RCW 41.80.020(1) states:

> Except as otherwise provided in this chapter, the matters subject to bargaining include wages, hours, and other terms and conditions of employment, and the negotiation of any question arising under a collective bargaining agreement.

The PSRA mandates coalition collective bargaining for health care benefits with the bargaining representative of <u>all</u> bargaining units for "the dollar amount expended on behalf of each employee for health care benefits shall be conducted between the employer and one coalition for all the exclusive bargaining representatives subject to this chapter." RCW 41.80.020(3). The amount agreed to with the coalition "shall be included in all master collective bargaining agreements negotiated by the parties." RCW 41.80.020(3). RCW 41.80.020(3) provides, in pertinent part:

> Matters subject to bargaining include the number of names to be certified for vacancies, promotional preferences, and the dollar amount expended on behalf of each employee for health care benefits. However, except as provided otherwise in this subsection for institutions of higher education,

---

[8] Emphasis added.

12

negotiations regarding the number of names to be certified for vacancies, promotional preferences, and the dollar amount expended on behalf of each employee for health care benefits shall be conducted between the employer and one coalition of all the exclusive bargaining representatives subject to this chapter. . . . Any such provision agreed to by the employer and the coalition shall be included in all master collective bargaining agreements negotiated by the parties.[9]

Under RCW 41.80.010(3)(a), the master CBA must be submitted to the Office of Financial Management by October 1 prior to the legislative session before the beginning of the biennium. The Office of Financial Management must certify that the master CBA is "feasible financially for the State." RCW 41.80.010(3)(b). "The legislature shall approve or reject the submission of the request for funds as a whole." RCW 41.80.010(3)(b). RCW 41.80.010(3) provides:

> The governor shall submit a request for funds necessary to implement the compensation and fringe benefit provisions in the master collective bargaining agreement or for legislation necessary to implement the agreement. Requests for funds necessary to implement the provisions of bargaining agreements shall not be submitted to the legislature by the governor unless such requests:
> (a) Have been submitted to the director of the office of financial management by October 1 prior to the legislative session at which the requests are to be considered; and
> (b) Have been certified by the director of the office of financial management as being feasible financially for the State.
> The legislature shall approve or reject the submission of the request for funds as a whole. The legislature shall not consider a request for funds to implement a collective bargaining agreement unless the request is transmitted to the legislature as part of the governor's budget document submitted under RCW 43.88.030 and 43.88.060. If the legislature rejects or fails to act on the submission, either party may reopen all or part of the agreement or the exclusive bargaining representative may seek to implement the procedures provided for in RCW 41.80.090.

Consistent with the requirement under RCW 41.80.010(2)(a) to negotiate a master CBA, the legislature adopted rules governing certification of an employee

---

[9] Emphasis added.

organization as the new exclusive bargaining representative of a bargaining unit. Under RCW 41.80.080(4)(b), a bargaining unit may petition to change bargaining representatives during a 30-day window that is "no more than one hundred twenty calendar days nor less than ninety days" before the expiration of the CBA. RCW 41.80.080(4)(b) states:

> No question concerning representation may be raised if: . . . [a] valid collective bargaining agreement exists covering the unit, except for that period of no more than one hundred twenty calendar days nor less than ninety calendar days before the expiration of the contract.

RCW 41.80.080(2)(a) states that when a new employee organization is certified as the exclusive bargaining representative of fewer than 500 employees and a master CBA is "in effect for the exclusive bargaining representative, it shall apply to the bargaining unit for which the certification has been issued." RCW 41.80.080(2)(a) states, in pertinent part:

> If an employee organization has been certified as the exclusive bargaining representative of the employees of a bargaining unit, the employee organization may act for and negotiate master collective bargaining agreements that will include within the coverage of the agreement all employees in the bargaining unit as provided in RCW 41.80.010(2)(a). However, if a master collective bargaining agreement is in effect for the exclusive bargaining representative, it shall apply to the bargaining unit for which the certification has been issued. Nothing in this section requires the parties to engage in new negotiations during the term of that agreement.[10]

The parties dispute whether under the plain language of the PSRA, the coalition master CBA was in effect and applied to FWOG. The State asserts PERC correctly decided that because the coalition master CBA was in effect when PERC certified FWOG, it applies, and the State did not have the authority to negotiate a new agreement with FWOG on wages and health care benefits. The State asserts RCW

---

[10] Emphasis added.

41.80.010(2)(a) authorizes supplemental collective bargaining only for agency-specific issues, not wages or health care benefits.

First, FWOG asserts the PSRA gives the State the authority to engage in supplemental collective bargaining for wages and health care benefits. We disagree. RCW 41.80.020 establishes the scope of bargaining. RCW 41.80.020(1) specifically states that "[e]xcept as otherwise provided in this chapter," wages and conditions of employment are subject to collective bargaining.[11] RCW 41.80.010(2)(a) requires bargaining units with fewer than 500 members engage in collective bargaining as a coalition and authorizes the State to enter into supplemental bargaining only for agency-specific issues as an addendum to the master CBA. Wages and health care benefits are not "agency-specific" issues.

Next, FWOG contends the PERC decision that the coalition master CBA applied ignores the right of employees to choose an exclusive bargaining representative and the right of an exclusive bargaining representative to negotiate a CBA. FWOG argues the definition of exclusive bargaining representative, RCW 41.80.005(9); the rights of employees, RCW 41.80.050; and the rights of the certified exclusive bargaining representative, RCW 41.80.080(3); require the State to engage in bargaining with FWOG for a new CBA on wages and health care benefits. We disagree.

RCW 41.80.005(9) defines an "exclusive bargaining representative" as "any employee organization that has been certified under this chapter as the representative of the employees in an appropriate bargaining unit." The PSRA grants employees the right to "bargain collectively through representatives of their own choosing . . . [e]xcept

---

[11] Emphasis added.

as may be specifically limited by this chapter." RCW 41.80.050.[12] The statute

addressing the responsibilities of a newly certified exclusive bargaining representative

of an employee organization of fewer than 500 members under RCW 41.80.080(3) also

does not require the State to negotiate a new CBA. RCW 41.80.080(3) states:

> The certified exclusive bargaining representative shall be responsible for representing the interests of all the employees in the bargaining unit. This section shall not be construed to limit an exclusive representative's right to exercise its discretion to refuse to process grievances of employees that are unmeritorious.

If a master CBA is in effect for a newly certified exclusive bargaining

representative representing fewer than 500 employees, the PSRA does not permit the

State to negotiate a separate CBA. RCW 41.80.080(2)(a) specifically states, "Nothing

in this section requires the parties to engage in new negotiations during the term of that

agreement."

The statutory scheme and plain language of the PSRA make clear the legislative

intent to require negotiating a master CBA by a coalition for bargaining units of fewer

than 500 members, and if that agreement is in effect when a new exclusive bargaining

representative is certified, it shall apply and the State may not negotiate a new

agreement.

FWOG concedes it did not file the petition for certification until after the WFSE

master CBA and the coalition master CBA were entered into for the 2011-2013

biennium. There is no dispute FWOG represents fewer than 500 employees and a

coalition master CBA for all bargaining units with fewer than 500 employees was "in

---

[12] RCW 41.80.050 states, in pertinent part:
Except as may be specifically limited by this chapter, employees shall have the right to self-organization, to form, join, or assist employee organizations, and to bargain collectively through representatives of their own choosing for the purpose of collective bargaining free from interference, restraint, or coercion.

effect" on June 24, 2011 when PERC certified FWOG as the exclusive bargaining representative. The statute anticipates certification will occur after a successor coalition master CBA has been negotiated and funded. RCW 41.80.080(4) allows questions concerning representation only during a "window" period of no more than 120 days nor less than 90 days before the expiration of a CBA. But the PSRA does not allow the State and the newly certified exclusive bargaining representative to negotiate subjects already covered in the master agreement. Instead, if a master CBA is "in effect," it will apply to the bargaining unit for which certification was issued and "[n]othing in this section requires the parties to engage in new negotiations during the term of that agreement." RCW 41.80.080(2)(a).

We conclude the State did not commit an unfair labor practice by refusing to negotiate a new CBA with FWOG on wages and health care benefits for the 2011-2013 biennium.

FWOG also asserts the PERC decision violates common law contract principles and the constitutional First Amendment right of association. We disagree. The Washington State Supreme Court has consistently held that the terms and conditions of public employment are controlled by statute. Wash. Fed'n of State Emps., AFL-CIO, Council 28, AFSCME v. State, 101 Wn.2d 536, 539-42, 682 P.2d 869 (1984).

FWOG concedes the First Amendment does not create a right to bargain but argues that "once a state creates a collective bargaining system it cannot infringe or retaliate against the exercise of rights under such statutes." FWOG does not meet its heavy burden to establish the PSRA is unconstitutional. Eugster v. State, 171 Wn.2d 839, 843, 259 P.3d 146 (2011) (We presume a statute is constitutional, and the

challenging party "bears the burden of establishing a statute's unconstitutionality beyond a reasonable doubt."). Nonetheless, we conclude the PSRA does not unconstitutionally infringe on the right to collective bargaining.[13]

We hold that under the plain language of the PSRA, PERC correctly concluded that the State did not commit an unfair labor practice by refusing to separately bargain with FWOG on wages and health care benefits. We reverse the superior court and affirm the PERC decision.

WE CONCUR:

Trickey, J.                                Becker,

---

[13] We also note the legislature declared an emergency and mandated the three percent salary reductions under ESSB 5860. RCW 41.80.020(5) provides that "[t]he employer and the exclusive bargaining representative shall not bargain over matters pertaining to management rights established in RCW 41.80.040." RCW 41.80.040 provides, in pertinent part:

The employer shall not bargain over rights of management which, in addition to all powers, duties, and rights established by constitutional provision or statute, shall include but not be limited to the following:

. . . .

(4) The right to take whatever actions are deemed necessary to carry out the mission of the state and its agencies during emergencies.